IN THE UNITED STATE BANKRUTPCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04-26000 |
| | ) | |
| Debtor. | ) | Honorable Bruce W. Black |
| | ) | |
| | ) | Hearing Date: February 9, 2005 |
| | ) | Hearing Time: 11:00 a.m. |

## FINAL APPLICATION OF KUGMAN ASSOCIATES, INC. FOR PROFESSIONAL COMPENSATION AND EXPENSE REIMBURSEMENT

### I. Relevant Factual Background

Kugman Associates, Inc. ("Kugman"), formerly the financial advisor (the "Financial Advisor") to Chapco Carton Company ("Chapco" or the "Debtor") in this Chapter 11 case,[1] submits this application (the "Application") for final compensation and expense reimbursement. This Application is submitted pursuant to Sections 330 and 331 of the Bankruptcy Code and Rule 2016 of the Federal Rules of Bankruptcy Procedure ("Rule 2016"). Specifically, this Application requests final allowance of $561,589.50 of compensation and $13,581.10 of expense reimbursement, for a total of $575,170.60, for professional services rendered and out-of-pocket expenses incurred by Kugman on behalf of Chapco during the time period from July 13, 2004 through December 22, 2004 (the "Compensation Period"). After deducting (i) postpetition payments totaling $384,677.99 received by Kugman from Chapco pursuant to the Payment Procedures Order (as defined

---

[1] By letter dated December 14, 2004, a copy of which is attached hereto and made a part hereof as Exhibit A, Kugman resigned as the Financial Advisor due to non-payment of its allowed compensation for October 2004. Specifically, on December 9, 2004, the Court entered an order overruling the Committee's objection to Kugman's October Statement (the terms "Committee" and "October Statement" are defined below) and allowing Kugman interim compensation and expense reimbursement of $101,092.11. The order also directed that the Debtor pay such allowed amount within two business days thereof. The Debtor failed to comply within the requisite time frame and Kugman's October compensation still remains due and owing.

below), plus a $75,000 prepetition advance payment retainer received by Kugman from the Debtor, Kugman hereby requests payment of final compensation and expense reimbursement of $115,492.61. In support of this Application, Kugman states as follows:

1.    On July 13, 2004 (the "Petition Date"), Chapco filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby initiating this bankruptcy case (the "Chapter 11 Case"). Thereafter, Chapco remained in possession of its assets and continued to operate its business as a debtor in possession in accordance with Sections 1107 and 1108 of the Bankruptcy Code.

2.    On August 5, 2004, the Court entered an order employing Kugman as the Financial Advisor to Chapco effective as of the Petition Date. A true and correct copy of that order is attached hereto and made a part hereof as Exhibit B.

3.    On July 29, 2004, the Court entered an order approving certain monthly payment procedures for professionals (the "Payment Procedures Order"). A true and correct copy of the Payment Procedures Order is attached hereto and made a part hereof as Exhibit C.

4.    Pursuant to the Payment Procedures Order, each professional covered thereby (including Kugman) was entitled to serve a monthly statement (a "Monthly Statement") of professional services rendered and expenses incurred on behalf of the Debtor or the Creditors' Committee, appointed pursuant to Section 1102 of the Bankruptcy Code (the "Committee"), as the case may be, for the preceding month. If no Recipient (as that term is defined in the Payment Procedures Order) filed an objection to the professional's Monthly Statement, then the professional was entitled to payment of 90% of the fees requested and 100% of the expenses requested on the Monthly

Statement. If, on the other hand, a Recipient filed an objection to the Monthly Statement, then the undisputed portion thereof was required to be paid in accordance with the percentages indicated above and the disputed portion (absent any resolution thereof between the professional and the Recipient objecting party) was subject to further order of Court after hearing thereon.

5.      Pursuant to the Payment Procedures Order, Kugman requested payment of Monthly Statements of professional fees and expenses for July, August, September and October 2004. The total amount requested pursuant to those Monthly Statements, $517,012.69, is summarized on Exhibit D hereto.[2] No objections were filed to Kugman's Monthly Statements for July, August and September 2004. Thus, Kugman received payment of $350,183.70 of compensation (90% of the amount requested) and $9,494.29 of expense reimbursement (100% of the amount requested) for those months.

6.      With respect to Kugman's Monthly Statement for October (the "October Statement"), the Committee filed an objection thereto. Specifically, the October Statement sought fees of $115,733 and expenses of $2,692.40 for a total amount of $118,425.40. The Committee objected to payment to Kugman of any amount of the October Statement in excess of $25,000. Stated differently, the Committee objected to $93,425.40 of the October Statement or to approximately 79% of the total amount sought by Kugman.

7.      Following the Committee's objection to October Statement, Kugman filed a response thereto and supporting memorandum. Pursuant to the Payment Procedures Order, the Court conducted a hearing the October Statement and the Committee's

---

[2] Exhibit D also includes a summary of the November Monthly Statement and December professional fees and expenses of Kugman.

objection thereto on December 2, 2004. On December 9, 2004, the Court entered an order

overruling the Committee's objection to the October Statement in its entirety and

authorizing payment to Kugman of $101,092.11 of fees and expenses.[3] A true and correct

copy of that order is attached hereto and made a part hereof as Exhibit E. The order

directed that the Debtor pay Kugman the allowed amount within two business days

thereof. Notwithstanding the unequivocal language in the order, no payment was made to

Kugman as directed by the Court.[4]

8.      Consistent with the Payment Procedures Order, on December 9, 2004,

Kugman also requested payment of its Monthly Statement for November 2004 (the

"November Statement"). The November Statement sought total fees and expenses of

$52,133.58. Despite the fact that no Recipient objected to Kugman's November

Statement, within the time prescribed in the Payment Procedures Order or otherwise,

Chapco has not paid Kugman any amounts due pursuant to the November Statement.

Therefore, Kugman has not been paid any compensation or expense reimbursement for

October and November 2004 (other than the originally undisputed $25,000 portion of the

October Statement). On information and belief, the Debtor has paid other professional

compensation and administrative expenses during the time frame it has failed to pay

Kugman.

9.      As stated in footnote 1, On December 14, 2004, Kugman officially

resigned as Financial Advisor to the Debtor. As a result, Kugman is no longer rendering

---

[3] Kugman voluntarily deferred ruling on $6,400 identified by the Committee as objectionable relating to
budget-related services. Kugman did so in an effort to seek an expedited resolution of the October
Statement. Inasmuch as Kugman is now seeking final compensation and expense reimbursement, and the
evidence at the hearing on December 2, 2004 on the October Statement fully addressed the Committee's
concerns regarding preparation of budgets by Kugman for October, Kugman is now seeking payment of the
$6,400 of voluntarily deferred fees.
[4] See footnote 1.

any professional services or incurring any expenses on behalf of Chapco other than with respect to preparation of this Application as required by the Payment Procedures Order and the Bankruptcy Code. The professional services rendered by Kugman during December 2004 through its resignation, and thereafter solely with respect to preparation of this Application, are also included in Group Exhibit F (as described in paragraph 12 below).

10.     As more fully discussed below, on December 2, 2004, the Court orally approved a sale of substantially all of Chapco's assets for total consideration of approximately $8 million. A written Court order was entered to that effect on December 9, 2004 (the "Sale Order"). A true and correct copy of the Sale Order is attached hereto and made a part hereof as Exhibit G. As clearly set forth in paragraphs 19, 20 and 21 of the Sale Order, Kugman provided substantial professional services relating to the successful sale of Chapco's assets and was instrumental to the sale process. Upon information and belief, the sale transaction closed in December 2004.

## II.     Subject Matter Categories

11.     In order to assist the Court and other parties-in-interest in evaluating the reasonableness of Kugman's requested compensation during the Compensation Period, Kugman has grouped its professional services into various Subject Matter Categories (collectively, the "Categories"; each, a "Category"). Kugman has attempted to place its time entries into the Category that best relates to such services. However, because certain time entries may relate to professional services in one or more Categories, such entries were included in the Category for which the bulk of the professional services were

rendered. Therefore, some services pertaining to one Category may in fact be included in another Category.

12.     The professional services performed by Kugman are generally described by Category below with a more detailed identification of the actual services provided as set forth on the attached Group Exhibit F. Group Exhibit F, which includes a separate billing statement for each project Category for each month during the Compensation Period, identifies the professionals of Kugman who rendered the specific services relating to each Category, a description of the professional services rendered, the hours spent on such services and total dollar value of the compensation sought for each professional by Category.[5]

## Category 1 – Bankruptcy Case Administration

13.     This Category includes all time spent by Kugman on issues related to administration of Chapco's Chapter 11 Case as well as on services that do not fit within any other Category. Services in this Category include: review of "First Day" motions, and preparing for testimony, if necessary, and attending Court regarding same; review of and revise Kugman retention papers; communications with Debtor's counsel regarding receipt of utility cut-off notices by Chapco and regarding providing adequate assurance of future performance to utilities; preparing for and attending Meeting of Twenty Largest Unsecured Creditors at the U.S. Trustee's Office for the purpose of forming the Committee; preparing for and attending initial meeting of all creditors of Chapco

---

[5] As pointed out above, Kugman submitted Monthly Statements for July through November 2004. Each of those Monthly Statements consisted of an itemized statement of the professional services rendered by Kugman by Category during the relevant month. Because those statements were already generated by Kugman's billing system as invoices, Kugman's billing system is now unable to produce a single itemized billing statement for each Category covering the entire Compensation Period. Therefore, as per the Monthly Statements, a separate billing statement by Category by month is attached to this Application. In that way, all of the time expended by Kugman during the Compensation Period will be included as part of Group Exhibit F to this Application.

pursuant to Section 341 of the Bankruptcy Code held at the U.S. Trustee's Office; and general communications with creditors and other parties-in-interest regarding the status and progress of the Chapter 11 Case. The foregoing is merely intended to be illustrative, not all-inclusive, of the professional services rendered by Kugman in this Category.

14.    In sum, Kugman spent a total of 109 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $29,963.50. An itemized listing of those services is included in Group Exhibit F hereto.

## Category 2 – DIP Financing Order Issues/CTB Communication

15.    This Category includes all the time spent by Kugman on matters relating to Chapco's secured lending arrangements with Cole Taylor Bank ("CTB"). At the commencement of the Chapter 11 Case, the Debtor was indebted to CTB in the approximate amount of $4 million. CTB's claim was secured by a first priority lien on substantially all of the Debtor's working capital assets (e.g., cash and cash equivalents, accounts receivable and inventory) and a second priority lien on equipment subject to pre-existing liens as of the Petition Date of IFC (as defined below) or other capital equipment lessors/secured creditors.

16.    Specifically, this Category includes postpetition time spent by Kugman on continuing negotiations of the DIP Financing Order (which negotiations commenced prior to the Petition Date), focusing on the business issues affecting the Debtor's ability to perform within the constraints of the Financing Order. This Category also includes all time spent by Kugman complying with the Financing Order. Specifically, Kugman was responsible for preparing numerous budgets on behalf of Chapco, based on information provided by Chapco and Kugman on-site personnel and subject to the limitations of

Chapco's loan availability. Due to the Debtor's ongoing negotiations with CTB, there was a period when interim budgets were prepared on a weekly basis. Moreover, this Category includes all communications with CTB regarding the foregoing matters and other issues arising under the Financing Order or impacting on Chapco's financing arrangements with CTB. Finally, this Category includes all time spent on communications between Kugman and Chapco representatives, including counsel, and on internal communications amongst Kugman personnel regarding the foregoing matters.

17.    In sum, Kugman spent a total of 254 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $74,450.50. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 3 – Creditors' Committee Communications**

18.    This Category includes all time spent by Kugman relating to communications with and providing information to the Committee. Specifically, Kugman responded to the Committee's requests for various financial information, whether required under the Financing Order or otherwise relating to internal reports generated by Chapco. Kugman also participated in periodic conference calls with the Committee to provide an update on Chapco's business operations, strategic considerations and, later, the sale process. This Category includes all time spent in preparation for those conference calls, including preparation of agendas, assembling financial and other information, communications with Debtor's counsel and communications with internal Kugman personnel. This Category also includes communications with the Committee's financial advisor, including providing documentation to and responding to information requests from him, as well as conducting an on-site visit for the advisor.

19.    Finally, this Category includes time spent preparing for and attending the Committee's deposition of Dale Marcus, a principal of Kugman, regarding various aspects of the services being rendered by Kugman on behalf of the Debtor. In retrospect, the primary purpose of the deposition appears to have been to prepare the Committee's objection to Kugman's October Statement. This Category also includes certain preliminary time spent reviewing the Committee's objection to Kugman's October fees and on communications with Committee's counsel in an attempt to resolve same.

20.    In sum, Kugman spent a total of 72.90 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $20,714.50. An itemized listing of those services is included in Group Exhibit F hereto.

## Category 4 – Prepetition Claims/Administrative Expenses

21.    This Category includes all time by Kugman regarding treatment of claims asserted against the Debtor. Initially, Kugman devoted time to determination of the treatment of claims arising on the Petition Date as either prepetition or postpetition claims. Additionally, Kugman devoted time to resolving disputes with shipping companies regarding unpaid prepetition invoices to avoid those claims being asserted directly against customers of Chapco. Time spent on prepetition consignment arrangements were also included in this Category. Finally, this Category includes all time preliminarily spent by Kugman assembling certain documentary evidence to perform a preference analysis as well as to determine the treatment of administrative expense claims for postpetition rent.

22.   In sum, Kugman spent a total of 48.44 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $13,176.50. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 5 – Production/Inventory Management**

23.   Kugman spent time in this Category on virtually a daily basis from the Petition Date through early November 2004. The services in this Category were of a varied nature and related to assisting the Debtor with matching its production requirements, based on customer orders, to existing inventory on hand and material purchases. All of these activities had to be managed to comply with Chapco's loan availability and other requirements under the Financing Order.

24.   Specifically, each week, Kugman, along with Chapco management employees, would develop a forecast of projected sales by SKUs for the coming week. This would then be compared to existing inventory on hand and to determine the required purchases for the week. Those purchases would be made subject to loan availability, with a higher priority being placed on the most profitable orders as well as those orders that could be completed on a timely basis to generate new accounts receivable. As a result, purchases had to be determined and be made on virtually a daily basis, due to the tight restrictions on loan availability, as opposed to making all required purchases at the beginning of each week.

25.   Kugman not only assisted Chapco in managing the weekly purchasing requirements but also was actively involved in the production scheduling process. This assistance was required due to Charlie Kiolbasa's more active role in sales management activities as well as Kugman's expertise in this engagement phase. The production

scheduling process was complicated by the purchasing limitations referenced above in

addition to weekly sales targets previously established by the Debtor.    In essence,

Kugman assisted Chapco in optimizing its production capabilities based on the

constraints associated with inventory limitations, physical production capacity issues,

sales order levels and the need to maintain loan availability.

     26.    Kugman services in this Category were absolutely essential to the

continuing operation of Chapco throughout the Chapter 11 Case and were necessary to

enable the Debtor to continue its business operations through a sale process. Without the

services rendered by Kugman in this Category, it is highly unlikely that the Debtor would

have been able to maintain its operations without violating the Financing Order.

     27.    In sum, Kugman spent a total of 315.30 hours on professional services in

this Category during the Compensation Period. Those services have an aggregate value of

$85,656. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 6 – Vendor Communications/Purchasing**

     28.    Most of the time spent by Kugman in this Category occurred from the

Petition Date through October 2004. No time was spent in November or December.

Initially, Kugman assisted the Debtor in maintaining its vendor relations after the filing of

the Chapter 11 Case. As is typical in bankruptcy cases, many of Chapco's vendors were

owed obligations for prepetition goods and services. Therefore, a great deal of time was

spent on vendor communications. Written communications included, but were not limited

to, assisting Chapco in drafting a letter to vendors advising of the bankruptcy filing and

of Chapco's continued business operations. In conjunction with written correspondence,

there were numerous instances of oral communication to further assure vendors of

Chapco's continuing business operations and ability to pay for its obligations on a postpetition basis. In connection therewith, Kugman assisted the Debtor in determining necessary purchases from specific vendors, consistent with order flow, subject to loan availability. Because Chapco's loan availability was very limited and changing incrementally on a day-to-day basis, it was a much more complicated task than usual to ensure that the correct purchases were made from the correct vendors for the specific operating needs of any given week. Kugman also took the lead role in negotiating supply arrangements with various vendors.

29.   As a result of Kugman's active involvement in vendor relations and purchasing decisions, this was another reason for Kugman's on-site presence at the Debtor's business location. And Kugman's efforts were essential to continuing the Debtor's business operations as a going concern, fulfillment of customer orders and maintaining the value of Chapco's business operations on a going concern basis to facilitate the sale. As a result of the forgoing, Kugman was communicating with vendors on virtually a daily basis regarding inventory requirements and reconciling trade vendor accounts. Kugman prepared various reports regarding weekly purchasing requirements, which were an essential management tool. Finally, this Category includes time spent negotiating shipping rates with freight carriers and some time spent on preference analysis work which was not captured in Category 4 – Prepetition Claims/Administrative Expenses.

30.   In sum, Kugman spent a total of 201.40 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $50,328. An itemized listing of those services is included in Group Exhibit F hereto.

## Category 7 – Sales/Customer Communications/Accounts Receivable

31.     The bulk of the professional services rendered by Kugman in this
Category occurred between the Petition Date through September 2004. Initially, Kugman
assisted Chapco with customer communications following the bankruptcy filing, to
ensure customers of the continuing operations of Chapco's business. In addition, Kugman
assisted Chapco in confirming outstanding accounts receivable balances as of the Petition
Date. Kugman also assisted management with marketing activities for new customers.

32.     Following the filing of Chapco's bankruptcy case, Kugman assisted
management in accounting for prepetition and postpetition transactions, both accounts
receivable and accounts payable, separately. Chapco continued to pursue collection of
prepetition accounts receivable, subject to any setoff rights of an account debtor arising
prepetition.  However, by letter (formulated by Kugman) and other communications,
customers were advised that prepetition setoffs could not be applied against postpetition
balances due and owing to Chapco due to a lack of mutuality (resulting from Chapco's
status as a postpetition debtor in possession).

33.     This Category also includes time spent by Kugman relating to Chapco's
accounting system – to properly account for accounts receivable as well as to forecast
collections of accounts receivable and to determine their impact on Chapco's borrowing
base and loan availability. Accounts receivable aging reports were prepared on a frequent
basis in an effort to manage accounts receivable and to attempt to expedite payments
from account debtors. In that way, Chapco obtained additional loan availability. Chapco
utilized customer visits to maintain ongoing relationships and to seek expedited payment
of accounts receivable balances.

34.    As stated, Kugman scrupulously monitored the Debtor's outstanding accounts receivable. It obtained confirmation of outstanding account balances from customers. Kugman assisted in the preparation of various reports to monitor same. And it worked with Chapco's accounting staff to ensure that prepetition setoffs were not being taken against postpetition balances due and owing Chapco. As also stated, various reports were prepared to monitor the aging of outstanding accounts receivable. This was done not only to expedite payment but also to ensure that a receivable would not become ineligible for borrowing base purposes.

35.    In sum, Kugman spent a total of 112.80 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $27,728.50. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 8 – Employee Issues**

36.    This Category includes all time spent by Kugman on employee-related matters. The bulk of the services in this Category were rendered during the initial two months of the Chapter 11 Case. Initially, Kugman assisted management in notifying employees of the effect of the bankruptcy filing on the continued operations of Chapco. Kugman also prepared a proposed letter, for management review and approval, for transmittal to employees regarding the effect of the bankruptcy on their current employee status and compensation/benefits, such as payroll, vacation and health insurance as well as treatment of outstanding employee expenses as of the Petition Date.

37.    This Category also includes time spent by Kugman communicating, primarily with management employees of the Debtor, regarding the appropriate manner and protocol to communicate with vendors and customers regarding Chapco's bankruptcy

filing and the continuing status of the Chapter 11 Case, to ensure customers of the continuing ability of Chapco to meet its financial obligations and manufacturing commitments. Kugman also assessed current employee functions and suggested changes to address new priorities necessitated by the bankruptcy filing. Finally, this Category includes time spent by Kugman regarding the treatment and priority of prepetition employee claims, including sales commissions.

38.     In sum, Kugman spent a total of 25.40 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $5,901.50. An itemized listing of those services is included in Group Exhibit F hereto.

### Category 9 – Leases/Executory Contracts

39.     This Category includes all time spent by Kugman on capital lease issues. Initially, Kugman assisted Chapco in contacting capital equipment lessors regarding the Chapter 11 Case. This included communications with IFC Corporation ("IFC"). IFC held a security interest in a significant amount of the Debtor's equipment, necessary to its ongoing operations. IFC had a first security interest in the subject equipment as opposed to CTB, which, as previously stated, possessed a first priority security interest in the working capital assets of the Debtor. Therefore, the cooperation of both lenders was necessary to maintain the operations of the Debtor. In addition to ongoing communications with IFC, Kugman also provided information requested by IFC to evaluate the Debtor's operations, including production reports establishing the utilization of IFC's equipment.

40.     At Kugman's request, the Debtor retained DoveBid to conduct a current appraisal of Chapco's equipment. The purpose of the appraisal was to establish a

benchmark for the value of such equipment for adequate protection purposes as well as to negotiate with secured creditors regarding adequate payments to be made.

41.     Kugman performed a detailed analysis of the Debtor's leases and executory contracts. The purpose of this analysis was to determine which of those leases and executory contracts were necessary to Chapco's ongoing business operations and which of them could be rejected or were of less value to the maintenance of Chapco's business operations. Obviously, this information impacted discussions with lessors regarding adequate protection commitments. Finally, this Category includes communications with Debtor's management and counsel regarding all of the foregoing matters.

42.     In sum, Kugman spent a total of 36.30 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $10,064. An itemized listing of those services is included in Group Exhibit F hereto.

## Category 10 – Insurance

43.     This Category was originally established by Kugman at the outset of the Chapter 11 Case to record all time spent on insurance-related matters, other than employee-related insurance. As it happens, Kugman recorded only one entry for .20 of an hour in this Category during the Compensation Period. Because this entry was previously included on Kugman's August Monthly Statement, it could not be transferred to Category 1 – Bankruptcy Case Administration.

## Category 11 – Internal/CTB Financial Reporting

44.     This Category includes all time spent by Kugman on bankruptcy accounting-related issues and financial reporting requirements. As a result of the Debtor's

bankruptcy filing, transactions had to be differentiated between prepetition and postpetition. Obviously, due to the automatic stay and Section 549 of the Bankruptcy Code, the Debtor was prohibited from making payments to creditors on account of prepetition obligations. By virtue of the Financing Order, the Debtor also had to maintain clear financial records as to prepetition accounts receivable and inventory as distinguished from accounts receivable generated and inventory acquired postpetition. This was necessary to ensure that prepetition obligations were first paid with prepetition collateral and that postpetition obligations would be paid with postpetition collateral, subject to the terms of the Financing Order. Kugman assisted management in accounting for financial transactions to comply with provisions of the Bankruptcy Code and the Financing Order.

45.    In addition, the Debtor was required to prepare (and/or review the Debtor's preparation of same) various financial reports for internal operating purposes, to comply with the Financing Order and to respond to requests from the Committee, IFC and other parties-in-interest. Those reports included, among other things, daily "flash reports" of the Debtor's key financial and operating parameters, weekly variance reports from the budgets (comparison of actual to budgeted amounts), productions reports, daily disbursements reports, job profitability reports, bank-to-book reconciliation of accounts receivable and inventory, etc. Those reports were also utilized for internal management purposes and to ensure compliance with the Financing Order and loan availability under the borrowing base formula contained in the Financing Order. Many of the reports required daily preparation such as the flash reports and lists of disbursements (which required Kugman's approval) and others were prepared on a weekly or other periodic

basis. The reporting requirements were significant and required great effort on the part of

the Debtor, its accounting staff and management as well as Kugman to ensure timely

preparation thereof. Many operating decisions were also based on the reports such as

determining the timing of payment of expenses as well as ordering of materials for

production and deferring expenditures to the extent necessary to comply with the

constraints of the borrowing base formula. A Cash EBITDA analysis was also developed

by Kugman to assist in evaluating the profitability of the Debtor on a cash basis without

the effects of accrual expenses such as depreciation, amortization, etc. The Cash

EBITDA reports more accurately reflected the current operating status of the Debtor

(inasmuch as depreciation expenses were non-cash and varied from month-to-month and

year-to-year and were not truly reflective of current operating performance) and were

useful in demonstrating the potential sale value of the Debtor's assets in terms of their

ability to generate positive EBITDA rather than to determine their liquidation value. That

subject will be discussed more fully in DIP 13 – Asset Sales.

   46.  In sum, Kugman spent a total of 214.20 hours on professional services in

this Category during the Compensation Period. Those services have an aggregate value of

$54,436.50. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 12 – Kugman Engagement Management**

   47.  This Category includes all time spent by Kugman on engagement

management issues and on internal communications between and among Kugman

personnel (except to the extent those communication only related to a particular subject

matter Category). The services rendered in this Category include: (i) tasking of Kugman

personnel on a weekly basis to ensure efficient utilization of such personnel and to adjust

staffing needs as required; (ii) communications regarding compliance with the Financing

Order and Kugman's role with respect thereto, including communications with respect to

development of budgets, approval of daily disbursements and preparation of various

financial reports; (iii) review and supervision of work performed by junior Kugman staff

members by more senior personnel; (iv) and evaluating engagement status on a frequent

basis to ensure coordinated efforts on behalf of Kugman to meet the Chapter 11 Case

objectives. The bulk of time spent in this Category concerned on-site communications of

Kugman personnel at the Debtor's business premises to ensure that daily and weekly

tasks were being properly administered and to avoid duplication of effort. This Category

also includes time spent by Kugman personnel discussing various aspects of the Debtor's

business operations, personnel requirements and redefining responsibilities and

objectives of the Debtor's personnel based on the Chapter 11 Case due to a change of

focus in business strategy.

     48.    Notwithstanding the foregoing, the bulk of Kugman's communications

related to the Debtor's sale process. Those time entries are generally included in Category

13 hereof.

     49.    In sum, Kugman spent a total of 80.80 hours on professional services in

this Category during the Compensation Period. Those services have an aggregate value of

$21,174. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 13 – Asset Sales**

     50.    This Category includes all time spent by Kugman relating to the

successful sale of the Debtor's assets as a going concern. The Court approved the sale on

or about December 2, 2004, and a written order (i.e., the Sale Order) was entered to that

effect on December 9, 2004. The Court's findings in the Sale Order concerning

Kugman's services relating to the sale process speak for themselves and provide a

detailed description of the services rendered by Kugman with respect to the sale process.

Those services are described in paragraphs 19 through 21 of the Sale Order. See Exhibit

G attached hereto. Thus, Kugman relies on the Court's own findings for a description of

its services in this Category.

51.     In sum, Kugman spent a total of 478.10 hours on professional services in

this Category during the Compensation Period. Those services have an aggregate value of

$133,353. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 14 – Reorganization/Restructuring**

52.     This Category includes all time spent by Kugman on non-sale alternatives

to disposition of the Debtor's assets and resolution of creditor's claims. Initially, the

Debtor filed the Chapter 11 Case with the hopes of filing an internal plan of

reorganization (a "Plan"). By September 2004, the Debtor's continued financing was

conditioned upon pursuing a dual-track approach to either an internal

reorganization/restructuring via a Plan or sale of its assets as a going concern. Ultimately,

as pointed out, the Debtor's assets were sold pursuant to a Section 363 sale.

53.     Before the restructuring efforts were abandoned, Kugman devoted

resources to analyzing an internal reorganization or wind-down of the Debtor's business

operations and corresponding disposition of its assets under that scenario. Various

projections were prepared utilizing certain pro forma assumptions. For example, it was

assumed that CTB would provide continuing financing to the Debtor under a Plan,

provided such Plan was feasible and supportable based on postpetition operating

performance of the Debtor. Kugman engaged in numerous conversations with the Debtor's management and counsel regarding such a Plan.

54.     Kugman also analyzed a wind-down or orderly liquidation of the Debtor. Kugman made various assumptions regarding the Debtor's ability to wind-down its business operations and sell its assets, and concerning the likely recovery to creditors therefrom. Under a wind-down scenario, Kugman determined not only that unsecured creditors would likely receive no distribution, but also that the Debtor's obligations to CTB would not be satisfied in full. Under the sale scenario (approved pursuant to the Sale Order), although CTB did not receive any cash at closing, upon information and belief, the purchaser assumed all of the Debtor's loan obligations to CTB. The purchaser also made an additional cash infusion into the Debtor's business, thereby enhancing the likelihood of the feasibility of the post-sale operations of the Debtor and of repayment of the assumed loans by the purchaser.

55.     In sum, Kugman spent a total of 74.40 hours on professional services in this Category during the Compensation Period. Those services have an aggregate value of $21,258.50. An itemized listing of those services is included in Group Exhibit F hereto.

**Category 98 – Monthly Fee Statements/Final Fee Application**

56.     This Category includes all time spent by Kugman complying with the Payment Procedures Order, preparing this Application and with respect to the contested hearing on the October Statement. Specifically, on a monthly basis, Kugman would prepare a Monthly Statement of services rendered. After review and editing of same, the Monthly Statement would be submitted to the Recipients as required under the Payment Procedures Order. Monthly Statements were issued for the months of July through

November 2004. With respect to the amounts for July, August and September, no

objections were filed to Kugman's statements and 90% of the fees requested and 100% of

the expenses requested for those months were timely paid by Chapco.

57.    As discussed in the Relevant Factual Background of this Application

and footnote 1, the Committee filed an objection to Kugman's Monthly Statement for

October 2004. After consensual efforts to resolve the matter failed, the Monthly

Statement was set for Court hearing. Following an evidentiary hearing the Court

approved the allowance of payment of approximately $101,000 of professional fees and

expenses for October (that amount represents 90% of the fees requested (less $6,400

voluntarily deferred by Kugman) plus 100% of expenses requested). The order required

that payment of the allowed amount be made within two business days thereafter. A copy

of the order (see Exhibit E) with a corresponding letter was sent to counsel for the Debtor

and CTB. Despite the Court order, the Debtor has not paid Kugman's allowed

compensation for October and CTB has not provided funding to the Debtor to pay such

compensation supposedly based on a lack of loan availability.[6] Kugman has filed a

motion to convert this Chapter 11 case to a Chapter 7 due to the failure to pay its

compensation/administrative claim as ordered by the Court.

58.    In sum, Kugman spent a total of 44.40 hours on professional services in

this Category during the Compensation Period. Those services were required to comply

with the Payment Procedures Order with respect to the filing of Monthly Statements and

the contested hearing on the October Statement, as well as with respect to filing this

Application (total amount of fees and expenses sought of $561,589.50). Kugman submits

---

[6] See paragraph 8 for discussion of Debtor's failure to pay Kugman's compensation for November 2004 in
accordance with the Payment Procedures Order.

that the aggregate value of its services of $13,324.50 in this Category is reasonable under the circumstances. An itemized statement of Kugman's services in this Category in included in Group Exhibit F attached hereto.

**Category 99 – Expenses**

58.     This Category includes all of the actual, reasonable and necessary expenses incurred by Kugman in connection with this engagement. All of such expenses were incurred solely on behalf of the Debtor and not on behalf any other party. The expenses include the actual cost of: meals, ground transportation, mileage, parking, postage, overnight delivery services and miscellaneous supplies. Although two of the principal Kugman employees assigned to this engagement, Sandy Bryant and Jim McCarthy, live outside the Chicago Metropolitan Area, Kugman did not charge the Debtor for any airfare or hotel expenses for their work in this engagement. Moreover, Kugman, as a matter of policy, does not charge for facsimile transmissions or internal photocopying.

59.     Kugman incurred total expenses of $13,581.10 during the Compensation Period. Those expenses are itemized on the Group Exhibit F hereto.

### III.    Miscellaneous

60.     There has been no duplication of services rendered herein by the professionals of Kugman. When two or more professionals participated in any matter, such joint participation was necessary because of the complexity of the problems involved and the need to familiarize additional professionals with such matters so that they themselves could perform further work thereon with respect to the tasks assigned to them based on their specific operational or financial skills.

61.    All the professionals rendered in expenses for which allowance and payment of compensation and reimbursement are hereby requested were rendered or incurred solely on behalf of Chapco, at Chapco's request or direction, and not on behalf of any entity. All the services and expenses are compensable pursuant to Sections 330 and 331 of the Bankruptcy Code and Rule 2016.

62.    Kugman submits that based on the criteria set forth in Section 330 of the Bankruptcy Code for evaluating the reasonableness of professional compensation, including the nature, extent and value of the services rendered, time spent on such services, the reasonableness thereof relative to the complexity of the work or tasks to be performed, the rates charged for the services, the necessity of the services rendered to the administration of Chapco's bankruptcy case, the cost of comparable services other than in the case under the Bankruptcy Code, the results achieved, the quality of the services, the cost of comparable services in Chapter 11 cases in this jurisdiction, and Kugman's standing, reputation and expertise, the allowance and payment of the requested compensation and expense reimbursement are fair and reasonable under the circumstances.

63.    As previously stated, Kugman has received total payments of $359,677.99 from the Debtor pursuant to the Payment Procedures Order for the months of July, August and September 2004. Kugman also received a $75,000 advance payment retainer prior to the commencement of the Chapter 11 Case. Finally, Kugman received payment of only $25,000 of its requested compensation and expense reimbursement for October 2004, despite this Court's order dated December 9, 2004 directing payment to Kugman of

$101,092.71 of allowed compensation for that month.[7] Therefore, Kugman has received

total payments of $459,677.99. In contrast, Kugman requests total compensation of

$561,589.50 and expense reimbursement of $13,581.10 during the Compensation Period.

This amount is comprised of the 10% holdback of its fees for the months of June, July,

August and September 2004 as well as all compensation and expense reimbursement

requested in excess of $25,000 for October 2004, plus all fees and expenses requested for

the first time pursuant to this Application for November and December 2004. As a result,

after giving due consideration to all payments received by Kugman, Kugman hereby

requests payment of $115,492.61 of final compensation and expense reimbursement.

      64.      Other than as provided in Section 504(b) of the Bankruptcy Code,

Kugman has not shared, nor agreed to share, any compensation or reimbursement

received the Financial Advisor to Chapco with any person, or firm or entity.

### IV.    **Request For Relief**

      **WHEREFORE**, Kugman requests the entry of an order, pursuant to Sections 330

and 331 of the Bankruptcy Code and Rule 2016, as follows:

      A.      Granting it a final allowance of $561,589.50 and expense reimbursement

of $13,581.10, for a total of $575,170.60;

      B.      Authorizing and directing the Debtor to pay Kugman such allowed

compensation and expense reimbursement, less (i) all payments made to Kugman of

$384,677.99 pursuant to the Payment Procedures Order (i.e., $84,469.43 for July 2004,

$138,226.12 for August 2004, $136,982.44 for September 2004 and $25,000 for October

---

[7] Moreover, it should be stated again for emphasis that Kugman submitted a Monthly Statement for November 2004 in accordance with the Payment Procedures Order requesting payment of $52,133.58 of professional compensation and expense reimbursement. Despite the fact that no Recipient has filed an objection to payment of that amount, the Debtor has not made any payment to Kugman even though, on information and belief, other Chapter 11 administrative expenses have been paid.

2004) and the $75,000 advance payment retainer made to Kugman by Chapco prior to the

Petition Date, leaving a net balance due of $115,492.61; and

      C.     Granting such other and further relief as this Court deems just and proper.

                            Respectively submitted,

                            Kugman Associates, Inc.

                            By_____

                                Its General Counsel

Michael J. Golde, Esq. (IL ARDC #6185578)
Kugman Associates, Inc.
30 North LaSalle Street
Suite 1724
Chicago, Illinois 60602
312-251-5550
312-251-5551

# **<u>EXHIBIT A</u>**

## Kugman Associates

CHICAGO ▪ NEW YORK ▪ LOS ANGELES

December 14, 2004

**<u>VIA FACSIMILE</u>**

Mr. Charlie Kiolbasa, Jr.
Chapco Carton Company
515 W. Crossroads Parkway
Bolingbrook, IL 60440

Dear Charlie:

This is to inform you that Kugman Associates, Inc. ("Kugman") hereby resigns effective immediately as financial advisors to Chapco Carton Company ("Chapco"), as debtor possession in the above referenced Chapter 11 case pending before Judge Black. We appreciated the opportunity to be of service to you and believe we were instrumental to the sale process as well as to Chapco's continuing business operations through the bulk of the sale process.

As you know, on or about November 23, 2004, Cole Taylor Bank ("CTB") indicated that it would no longer fund the professional services rendered by Kugman on behalf of Chapco. At that time, we ceased an active role in this case and only provided services on ad hoc basis to facilitate due diligence requests of prospective purchasers of Chapco's assets. For example, we responded to inquiries from prospective purchasers regarding financial information relating to Chapco and kept you apprised of such communications. Ultimately, the Court orally approved a successful sale of the Chapco's assets on December 2, 2004, and a written order approving various sale transactions was entered on December 9, 2004. That order made specific findings regarding the nature and extent of services provided by Kugman relating to the sale process and the necessity of those services to a successful outcome.

As you know, shortly after the bankruptcy case was filed, the court entered an order approving monthly payment procedures for professionals. In accordance with that order, Kugman submitted its fee statement for October during the first week of November. The Creditors' Committee (the "Committee") filed an objection to that statement and Kugman filed a response and a memorandum in support thereof. A contested hearing was held on the fee request and the Committee's objection thereto on December 2, 2004, at which time Dale Marcus testified. On December 9, 2004, the court entered an order overruling the Committee's objection to Kugman's October fee request and directing that payment of Kugman's allowed fees of $101,092.11 be made within two business days thereof. A copy of that order was sent to Chad Gettleman, Chapco's counsel, and to Eric Prezant, CTB's counsel.

Charlie Kiolbasa, Jr.
December 14, 2004
Page 2

Notwithstanding the court's order, Kugman was not paid its allowed fees within two business
days of the order's entry. Moreover, there has been no indication that those fees will be paid by
Chapco or that those fees will be funded by Cole Taylor Bank for payment by Chapco. As a
result, Kugman is not in a position to continue to render professional services to Chapco.
Kugman, however, reserves the right to seek payment of all allowed and accrued fees for
services rendered on behalf of Chapco through the date hereof.

If you have any questions regarding the forgoing, please do not hesitate to contact me.

Very truly yours,

Michael J. Golde

cc: Chad H. Gettleman*
    Steven B. Towbin*
    Dale G. Marcus

MJG:acs

* Via Facsimile

# <u>EXHIBIT B</u>

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04 B 26000 |
| a Delaware corporation | ) | |
| FEIN 36-2057071 | ) | |
| Debtor. | ) | Honorable Bruce W. Black |

## ORDER AUTHORIZING DEBTOR TO EMPLOY KUGMAN ASSOCIATES, INC. AS FINANCIAL ADVISORS

At Chicago, Illinois in said District this 5th day of August, 2004

THIS CAUSE coming on to be heard upon the emergency motion of Chapco Carton Company, a Delaware corporation, debtor and debtor-in-possession herein (the "Debtor") for entry of an order pursuant to Section 327 of the Bankruptcy Code, to employ Kugman Associates, Inc. as financial advisors to the Debtor (the "Motion"); the Court having reviewed the Motion and the Affidavit of Dale G. Marcus attached thereto; and the Court being satisfied that Kugman Associates, Inc. does not represent any interest adverse to the Debtor or its estate as to the matters on which it is to be employed and retained, and is disinterested under Section 101(14) of the Bankruptcy Code as modified by Section 1107(b) of the Bankruptcy Code; and that the employment of Kugman Associates, Inc. is necessary and in the best interests of the Debtor and its estate; and due written notice of the Motion having been given to all parties entitled thereto; it appearing that no other or further notice need be given and the Court being otherwise fully advised in the premises;

NOW, THEREFORE IT IS HEREBY ORDERED that the Motion is hereby granted and the Debtor be and is hereby authorized to employ Kugman Associates, Inc., *nunc pro tunc*, as of July 13, 2004, under a general retainer, as its financial advisors in this Chapter 11 case.

ENTERED: _Bruce W. Black_

_____
U.S. BANKRUPTCY JUDGE

8/5/04

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
BRAD A. BERISH, ESQ. (ARDC #06200891)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Attorneys for the Debtor

62903.1 8/5/04

# **<u>EXHIBIT C</u>**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04 B 26000 |
| a Delaware corporation | ) | |
| FEIN 36-2057071 | ) | |
| | ) | |
| Debtor. | ) | Honorable Bruce W. Black |

### ORDER ESTABLISHING PROCEDURES FOR THE
### PAYMENT OF MONTHLY INTERIM COMPENSATION
### AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

At Chicago, in said District, this 29th day of July, 2004.

THIS CAUSE coming on to be heard upon the motion of Chapco Carton Company, a

Delaware corporation, debtor and debtor in possession herein (the "Debtor") for the entry of an

administrative order for establishing procedures for the payment of monthly interim

compensation and reimbursement of expenses of Professionals, as defined therein (the

"Motion"); due written notice hereof having been given to all parties entitled thereto; no further

notice hereof being necessary under the circumstances; no parties having been heard to object to

the entry hereof; good cause having been shown for the entry hereof; the Court having reviewed

the Motion and having heard and considered the statements of counsel present; and the Court

being otherwise fully advised in the premises;

NOW, THEREFORE, IT IS HEREBY ORDERED as follows:

1.    The Motion be and is hereby granted.

2.    Each of the court appointed Professionals in this case shall be entitled to seek the

payment of monthly interim compensation and reimbursement of expenses in accordance with

the following terms and conditions:

(a) On or before the last day of the month following the month for which compensation is sought, each Professional will submit a monthly statement (the "Monthly Statement") to the Recipients, as defined in the Motion;

(b) Each of the Recipients receiving such Monthly Statement(s) will have seven (7) days after the date of each such Monthly Statement(s) ("Review Period") to review the statement, and if necessary, file a Fee Objection, as defined below, in said party's sole and absolute discretion;

(c) If no Fee Objection is timely filed and served as provided herein, at the expiration of the Review Period, the Debtor will promptly pay ninety percent (90%) of the fees and one hundred percent (100%) of the disbursements requested in the Monthly Statement(s). Any Professional who fails to submit a Monthly Statement for any given month, shall be entitled to combine such services and expenses in the Professional's next Monthly Statement. If any Professional does not file a Monthly Statement, such Professional shall be ineligible to receive further payments of fees expenses as provided herein until such time as the Monthly Statement is submitted, or pursuant to further order of this Court;

(d) In the event that any of the Recipients have an objection to the compensation or reimbursement sought in any of the Monthly Statements, the Recipient shall be required within the Review Period to file a written objection setting forth the nature of the objection and the amount at issue in reasonable detail ("Fee Objection") and serve a copy of same on the Professional in question and all of the other Recipients. Thereafter, the objecting Recipient and the Professional whose Monthly Statement is objected to shall attempt to reach a written agreement regarding a mutually agreeable payment which can be made, following which, the Debtor shall then be authorized to remit such amount to the Professional without further order in accordance with the terms hereof. If the parties are unable to reach an agreement on the Fee Objection within ten (10) days after the expiration of the Review Period, then either the objecting Recipient or the Professional in question may file a motion with the Court to consider and dispose of the Fee Objection. Notwithstanding the filing of a Fee Objection, the Debtor will be required to pay promptly ninety percent (90%) of those fees and one hundred percent (100%) of those disbursements that are not the subject of the Fee Objection;

(e) Approximately every four (4) months, each of the Professionals shall file with the Court and serve on all parties identified in the Official Service List maintained in

this case, an application for interim compensation pursuant to section 331 of the Bankruptcy Code setting forth the compensation and reimbursement of expenses requested for the prior four (4) months;

(f)     The pendency of an application for a Court order for payment of any compensation or reimbursement of expenses, and/or the pendency of any Fee Objection, shall not disqualify such Professional from the future payment of compensation or reimbursement of expenses in the manner as set forth above. Neither the payment of, nor the failure to pay, in whole or in part, monthly interim compensation and reimbursement as provided herein shall bind any party in interest or this Court with respect to the final allowance of applications for compensation and reimbursement of Professionals; and

(g)     The first period to be covered by the monthly payment proposal set forth herein, shall be for the month of July 2004.

3.     Notice of any and all further hearings to consider interim applications shall be sent to: (i) the Debtor; (ii) each of the Debtor's secured lenders; (iii) the United States Trustee; and (iii) all parties who have filed a notice of appearance with the Clerk of this Court and requested such notice.

4.     Any and all interim compensation and reimbursement of expenses payable in accordance with this Order shall be subject to final allowance pursuant to further order of this Court.

ENTER:

_Bruce W. Black_

U. S. BANKRUPTCY JUDGE

7/29/04

HOWARD L. ADELMAN, ESQ. (ARDC #0015458)
CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
BRAD A. BERISH, ESQ. (ARDC #06200891)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050
Attorneys for the Debtor

# **EXHIBIT D**

## 2004 DIP Summary
## On
## Chapco Carton

| Code | Description | July Time | July Amount | August Time | August Amount | September Time | September Amount | October Time | October Amount | November Time | November Amount | December Time | December Amount | Total Time | Total Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| DIP1 | Bankruptcy Case Administration | 30.10 | 8,696.00 | 63.90 | 16,817.00 | 3.40 | 950.00 | 4.70 | 1,402.50 | 5.10 | 1,545.00 | 1.80 | 543.00 | 109.00 | 29,963.50 |
| DIP2 | DIP Financing/Order Issue/CTB Communications | 28.80 | 8,051.50 | 66.80 | 19,238.00 | 84.70 | 25,245.50 | 21.70 | 6,414.50 | 52.00 | 15,901.00 | | | 254.00 | 74,450.50 |
| DIP3 | Creditors' Committee Communications | 25.10 | 7,214.50 | 17.70 | 4,778.50 | 11.90 | 3,430.00 | 9.00 | 2,658.50 | 9.20 | 2,714.50 | | | 72.90 | 20,714.50 |
| DIP4 | Prepetition Claims/Administrative Expenses | 3.30 | 927.50 | 5.50 | 1,220.00 | 9.40 | 2,694.00 | 28.24 | 7,785.00 | 1.50 | 412.50 | 0.50 | 137.50 | 48.44 | 13,176.50 |
| DIP5 | Production/Inventory Management | 82.80 | 22,008.00 | 109.00 | 28,543.00 | 80.50 | 22,232.50 | 39.40 | 10,795.00 | 3.60 | 999.50 | | | 315.30 | 85,656.00 |
| DIP6 | Vendor Communications/Purchasing | 52.50 | 13,313.50 | 116.00 | 29,005.00 | 28.30 | 7,196.50 | 4.40 | 1,266.00 | 1.40 | 387.00 | | | 201.40 | 50,728.00 |
| DIP7 | Sales/Customer Communications/Accounts Receivable | 16.10 | 3,834.00 | 74.60 | 17,935.50 | | | 3.20 | 880.00 | 2.00 | 560.00 | 0.70 | 210.00 | 112.80 | 27,726.00 |
| DIP8 | Employee Related Issues | 16.20 | 3,828.00 | 9.20 | 2,075.50 | 17.90 | 4,625.00 | | | | | | | 25.40 | 5,901.50 |
| DIP9 | Leases/Executory Contracts | 4.50 | 1,161.50 | 10.70 | 2,837.00 | 16.90 | 4,785.60 | 3.70 | 1,128.50 | 0.50 | 132.00 | | | 36.30 | 10,664.00 |
| DIP10 | Insurance | | | 0.20 | 60.00 | | | | | | | | | 0.20 | 60.00 |
| DIP11 | Internal/CTB Financial Reporting | | | 83.60 | 20,695.50 | | | 33.50 | 9,443.50 | | | | | 214.40 | 54,436.50 |
| DIP12 | Kragman Engagement Management | 59.70 | 14,382.00 | 19.00 | 4,443.50 | | | 5.80 | 1,706.00 | 16.80 | 4,521.50 | | | 80.80 | 21,174.00 |
| DIP13 | Asset Sales | 28.10 | 6,906.00 | 5.50 | 1,462.00 | | | 11.60 | 3,407.50 | 67.50 | 18,763.00 | | | 478.10 | 133,533.00 |
| DIP14 | Recognizance/Restructuring | | | | | | | 222.60 | 61,641.00 | 0.10 | 27.50 | | | 74.40 | 21,258.50 |
| DIP15 | Fee Applications | | | 4.40 | 1,321.00 | | | 30.70 | 8,611.58 | 18.40 | 5,571.50 | 15.50 | 4,850.00 | 44.40 | 13,324.50 |
| DIP16 | Expenses | | 3,099.98 | | 3,446.17 | | 2,946.14 | 1.50 | 1,382.00 | | 910.59 | | 463.83 | | 13,981.10 |
| | | | | | | | | | 2,692.40 | | | | | | |
| | **Total** | 341.30 | $ 83,510.68 | 585.10 | $ 153,291.67 | 526.80 | $ 151,875.14 | 414.24 | $ 119,423.40 | | $ 52,133.50 | 18.50 | $ 6,024.33 | 2,067.04 | $ 575,170.60 |

# **EXHIBIT E**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| CHAPCO CARTON COMPANY, | Case No. 04-26000 |
| Debtor. | Honorable Bruce W. Black |
| | Hearing Date: December 2, 2004 |
| | Hearing Time: 11:00 a.m. |

### ORDER OVERRULING COMMITTEE'S OBJECTION TO KUGMAN ASSOCIATES, INC.'s OCTOBER STATEMENT AND DIRECTING DEBTOR TO DISBURSE PAYMENT

Upon consideration of the October Statement of Kugman Associates, Inc. ("Kugman"), the Committee's Objection thereto and after an evidentiary hearing thereon; it is **ORDERED**:

1.     The Committee's Objection is overruled as set forth in this order.

2.     Kugman is allowed $98,399.71 in interim compensation and $2,692.40 in interim expenses for a total amount of $101,092.11 for the month of October 2004.

3.     Kugman defers its request for compensation as to $6,400 relating to budgeting services until the submission of its first interim fee application.

4.     The Debtor is authorized and directed to pay Kugman $98,399.71 in interim compensation and $2,692.40 in interim expenses for a total of $101,092.11 within two business days of this order.

5.     This Court reserves jurisdiction to modify or supplement this order as circumstances may require.

ENTER:

Dated: December 9, 2004

Bruce W. Black

Hon. Bruce W. Black,
Bankruptcy Judge

{A0078186.DOC}

# GROUP EXHIBIT F

# KUGMAN ASSOCIATES

21 South Clark Street
Suite 3300
Chicago, IL 60603
EIN# 36-3893594

Invoice submitted to:
Chapco Carton Corporation DIP
515 W. Crossroads Parkway
Bolingbrook IL 60440
Mr. Charles G. Kiolbasa, Jr.

August 11, 2004

Invoice #12071

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| | DIP 01 | | | |
| 7/13/2004 | MJG | Telephone conference with Dale Marcus and Chad Gettleman regarding court hearing on Financing Order and other First Day motions; | 0.20 300.00/hr | 60.00 |
| | MJG | Telephone conference with Brent Kugman regarding Kugman retention papers/issues; meeting with certain customers of Debtor regarding bankruptcy filing; | 0.20 300.00/hr | 60.00 |
| | MJG | Review of e-mail from Dale Marcus regarding postpetition services to be rendered by Kugman as financial advisors; | 0.20 300.00/hr | 60.00 |
| | MJG | Prepare of extensive revisions to draft of Affidavit in support of Kugman retention application based on additional info. from Debtor's counsel and Kugman professionals and conferences with same; | 2.00 300.00/hr | 600.00 |
| | MJG | Additional telephone conference with Chad Gettleman regarding Kugman retention papers; | 0.10 300.00/hr | 30.00 |
| | MJG | Review of e-mail from Chad Gettleman regarding filing of Chapco Chapter 11 case and relevant info. with respect thereto; | 0.10 300.00/hr | 30.00 |
| | MJG | Telephone conference with Chad Gettleman regarding filing of Chapco bankruptcy case; finalizing and filing Kugman retention papers and supporting affidavit; | 0.30 300.00/hr | 90.00 |
| | MJG | Review of proposed order authorizing Debtor to employ Kugman Associates as financial advisors; | 0.10 300.00/hr | 30.00 |

Chapco Carton Corporation DIP                                                    Page    2

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/13/2004 | MJG | Review of e-mail from Dale Marcus regarding initial bankruptcy court hearing in Chapco; | 0.10 300.00/hr | 30.00 |
| | MJG | Conference with Dale Marcus regarding motion to employ Kugman Associates as financial advisors to Debtor; | 0.20 300.00/hr | 60.00 |
| | MJG | Preparation of e-mail message to Brent Kugman and Dale Marcus regarding treatment of petition date obligations; professional fees; | 0.10 300.00/hr | 30.00 |
| | SB | Teleconferences with Chad Gettleman to discuss filing status, issues related to employee vacation pay, expenses, petty cash, retention of professionals, DIP financing order and related issues. | 0.30 275.00/hr | 82.50 |
| | JM | Preparation and transmittal of email to Chad Gettleman requesting information concerning bankruptcy DIP order. | 0.60 270.00/hr | 162.00 |
| | JM | Continued preparation of vendor letter after reviewing legal counsel inputs. | 0.70 270.00/hr | 189.00 |
| | JM | Teleconference with Dale Marcus regarding need to call appraiser and set values for post petition assets. | 0.30 270.00/hr | 81.00 |
| | JM | Review of updates and comments from Debra Percy concerning bankruptcy communications to stakeholders. | 0.60 270.00/hr | 162.00 |
| | JM | Review of flash report from Jerry Poch. | 0.40 270.00/hr | 108.00 |
| | JM | Discussion with Jerry Poch regarding inventory transactions measured on flash report. | 0.40 270.00/hr | 108.00 |
| | BIK | Telephone conference with Michael Golde regarding Kugman retention papers/issues; meeting with certain customers of Debtor regarding bankruptcy filing; | 0.20 305.00/hr | 61.00 |
| | DGM | Review/modifications to the Motion to Employ Kugman associates as the Restructuring Consultant and draft of language expanding the specific role of KA as part of the restructuring process | 0.50 305.00/hr | 152.50 |
| | MJG | Review of initial draft of Debtor's motion to employ Kugman Associates as financial consultants; prepare extensive comments and revisions thereto and fax same to Chad Gettleman, Debtor's counsel; prepare e-mail to Gettlemen regarding same and status of affidavit in support of Motion; | 0.40 300.00/hr | 120.00 |
| 7/14/2004 | MJG | Devote time to Chapter 11 DIP Codes for Kugman professional compensation; exchange spreadsheets regarding detailing categories; | 0.30 300.00/hr | 90.00 |
| | SB | Teleconference with Chad Gettlemen regarding cut off notices and vendor and customer notices. Discussion related to bank account management, wires made post-petition. | 0.30 275.00/hr | 82.50 |

Chapco Carton Corporation DIP                                                                       Page      3

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/14/2004 | JM | Preparation and transmittal of email to provide information to the banks about the top activities being conducted as part of the analysis process. | 0.60 270.00/hr | 162.00 |
|  | MJG | Attend court regarding First Day Motions, including Motion to Approve DIP Financing Order and professional retention motions; conference with counsel for Debtor, Cole Taylor Bank and UST at court (prior and subsequent to court hearing); | 2.00 300.00/hr | 600.00 |
|  | JM | Detailed review of vendor master list e-mailed by Ryan Abud | 0.70 270.00/hr | 189.00 |
|  | MJG | Review of package from Adelman & Gettleman of First Day Motions, including Motion to Approve DIP Financing Order (with new version of Financing Order and Budget attached) and professional retention motions; review of Emergency Hearing certifications regarding same; review of correspondence from Chad Gettleman regarding correspondence to Judge Black regarding same; | 1.20 300.00/hr | 360.00 |
| 7/15/2004 | MJG | Telephone conference with Chad Gettleman regarding UST inquiries regarding prepetition payments to Kugman firm; confirming that Kugman has no indemnification agreement with Debtor; | 0.10 300.00/hr | 30.00 |
|  | MJG | Telephone conference with Dale Marcus regarding prepetition payments to Kugman firm; confirming no indemnification agreement from Debtor; | 0.20 300.00/hr | 60.00 |
|  | MJG | Voicemail message to Roman Sukley regarding clarifying prepetition payments to Kugman from Debtor; confirming no indemnification agreement; | 0.10 300.00/hr | 30.00 |
|  | JM | Detailed review of final draft for vendor letter prior to sending out to all vendors. | 1.10 270.00/hr | 297.00 |
|  | JM | Review of planned disbursements to determine which vendors needed follow up calls. | 0.50 270.00/hr | 135.00 |
| 7/16/2004 | JM | Teleconference with Al Hodges of Interfilm who requested information on bankruptcy and court filings and | 0.30 270.00/hr | 81.00 |
|  | JM | Preparation and transmittal of email to Chad Gettleman requesting the DIP order that had been filed and the court information. | 0.30 270.00/hr | 81.00 |
|  | JM | Preparation and transmittal of email to Chad Gettleman requesting procedural process for ongoing information requests and follow up. | 0.50 270.00/hr | 135.00 |
|  | JM | Preparation and transmittal of facsimile to provide review and signatures for wires to pay for needed materials to continue operations. | 0.50 270.00/hr | 135.00 |
|  | JM | Teleconference with Sandy Bryant to discuss status of wires for materials needed. | 0.30 270.00/hr | 81.00 |

Chapco Carton Corporation DIP

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/16/2004 | MJG | Telephone conference with Chad Gettleman regarding communications with UST regarding Kugman prepetition payments and no indemnification; MTL meeting at UST on 7/21 regarding formation of creditors' committee; | 0.20 300.00/hr | 60.00 |
| | MJG | Preparation of e-mail message to Chad Gettleman regarding summary of prepetition payments made by Debtor to Kugman Firm; attempts to reach Roman Sukley of UST regarding same; | 0.20 300.00/hr | 60.00 |
| 7/19/2004 | MJG | Review of motion for administrative order establishing procedures for payment of interim compensation and expenses reimbursement; review order regarding same; review of motion to pay certain prepetition employee wages and benefit obligations; | 0.30 300.00/hr | 90.00 |
| 7/21/2004 | DGM | Preparation for upcoming initial meeting of the unsecured creditors in terms of presentation related materials for same | 0.60 305.00/hr | 183.00 |
| | DGM | Phone call with C. Gettleman re: preparation for upcoming meeting with unsecured creditor group | 0.20 305.00/hr | 61.00 |
| | DGM | Attendance at the UST offices for the first meeting of the unsecured creditors of Chapco-DIP to address operational and financial questions of the Debtor | 1.10 305.00/hr | 335.50 |
| 7/22/2004 | MJG | Telephone call from Howard Adelman regarding Seyfarth Shaw inquiries regarding prepetition payments to Kugman firm; necessity of postpetition services; | 0.10 300.00/hr | 30.00 |
| | DGM | Conference call with M. Golde and H. Adelman re: Review of various legal related issues including but not limited to post-petition rent, DIP Carveout, IFC related issues, KA retention | 0.80 305.00/hr | 244.00 |
| | MJG | Review of orders entered by court on July 22 regarding schedules, utilities, retention of attorneys, etc.; preparation of e-mail to Dale Marcus regarding Kugman responsibilities with respect to those orders; | 0.20 300.00/hr | 60.00 |
| | SB | Teleconference with Adam Silverman to review today approved court motions, status of issue related to Mardi freight, and consignment ink vendor Gibbons America. | 0.30 275.00/hr | 82.50 |
| 7/23/2004 | DGM | Meeting with H. Adelman and A. Silverman re: Discussions/review of the following, but not limited to, issues related to the Chapco-DIP Chapter 11 proceedings, discussion of information request from and future communication with the Committee of Unsecured Creditors, negotiation strategies with IFC Credit, revisions to the proposed Carveout for professionals, initial steps to the development of a Plan of Reorganization | 1.50 305.00/hr | 457.50 |
| | DP | Attention to Adelman and Gettleman consignee liability for freight charges. | 0.20 200.00/hr | 40.00 |

Chapco Carton Corporation DIP

Page    5

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/23/2004 | MJG | Review of correspondence from Adam Silverman regarding same; prepare e-mail to Sandy Bryant regarding court orders entered on July 22; conference with Dale Marcus regarding Kugman responsibilities with respect to orders; | 0.30 300.00/hr | 90.00 |
| 7/26/2004 | JM | Teleconference with Howard Adelman regarding Uniform contract cancellation of terms. | 0.40 270.00/hr | 108.00 |
| 7/27/2004 | MJG | Conference with Dale Marcus regarding agenda for telephonic meeting with Committee; | 0.20 300.00/hr | 60.00 |
| | MJG | Telephone conference with Dale Marcus regarding Committee's request to continue Kugman retention motion; additional conference with Marcus regarding same and review of e-mail message regarding retention issue and effect on continued financing; | 0.30 300.00/hr | 90.00 |
| | MJG | Telephone conference with Howard Adelman regarding Kugman retention issues; Kugman prepetition invoices and transmittal of same to Bill Factor of Seyfarth; | 0.10 300.00/hr | 30.00 |
| | MJG | Prepare e-mail to Bill Factor regarding Kugman prepetition invoices in connection with Kugman retention; | 0.10 300.00/hr | 30.00 |
| | MJG | Telephone conference with Brent Kugman regarding pre-petition billing to/payments from Debtor; | 0.10 300.00/hr | 30.00 |
| | MJG | Review of Kugman prepetition billing statements and WIP summary; review same in connection with inquiries from IFC regarding Kugman's retention; | 0.50 300.00/hr | 150.00 |
| | MJG | Preparation of correspondence to Bill Factor at Seyfarth regarding Kugman prepetition payments from Debtor; Kugman retention issues; conference with Dale Marcus regarding same; | 0.80 300.00/hr | 240.00 |
| | MJG | Exchange of e-mail messages with Dale Marcus and Liz Sliwa regarding prepetition professional services to Debtor and providing detail to Seyfarth, counsel for IFC; | 0.20 300.00/hr | 60.00 |
| | BIK | Telephone conference with Michael Golde regarding pre-petition billing to/payments from Debtor; | 0.10 305.00/hr | 30.50 |
| | MJG | Prepare lengthy e-mail message to Howard Adelman regarding Kugman engagement letter and prepetition payments; responding to potential concerns raised by parties regarding Kugman's possible receipt of preferential transfers, etc.; additional review of said invoices; | 0.50 300.00/hr | 150.00 |
| | MJG | Exchange of e-mail messages with Bill Factor regarding prepetition payments to Kugman firm; | 0.20 300.00/hr | 60.00 |
| 7/28/2004 | BIK | Conference with Michael Golde regarding Kugman retention issues; | 0.20 305.00/hr | 61.00 |

Chapco Carton Corporation DIP                                                      Page      6

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/28/2004 | MJG | Conference with Dale Marcus regarding Kugman retention issues; allegations that Kugman received prepetition preference; coordinating response with Debtor's counsel; | 0.20 300.00/hr | 60.00 |
|  | MJG | Conference with Brent Kugman regarding Kugman retention issues; | 0.20 300.00/hr | 60.00 |
|  | MJG | Conference with Dale Marcus regarding Committee's request for additional week to review Kugman retention request; discuss proposal to extend hearing for one week, provided that Kugman is compensated for services rendered during that period; | 0.20 300.00/hr | 60.00 |
|  | SB | Review of court motions for adequate assurance payments for utilities and provide direction to Chapco staff to incorporate in recurring disbursements files. | 0.50 275.00/hr | 137.50 |
| 7/29/2004 | SB | Review of court motions presented related to Kugman retention and protective order . Provide direction to Kugman Associates and Chapco staff regarding documents to prepared and transmitted documents. | 0.60 275.00/hr | 165.00 |
|  | DGM | Communication with H. Adelman regarding professional fee escrow account management | 0.20 305.00/hr | 61.00 |
|  | MJG | Review of e-mail from Chad Gettleman regarding hearing on Kugman retention motion; Committee and IFC's position regarding same; | 0.10 300.00/hr | 30.00 |
|  | MJG | Telephone conference with Chad Gettleman regarding court hearing on Kugman retention motion and professional fees payment procedures motion; conference with Dale Marcus regarding same; | 0.30 300.00/hr | 90.00 |
|  | MJG | Conference with Dale Marcus regarding hearing on Kugman retention application and related issues; | 0.20 300.00/hr | 60.00 |
| 7/30/2004 | MJG | Review of order establishing procedures for payment of interim compensation to professionals; prepare e-mail to Chapco engagement team regarding same; | 0.30 300.00/hr | 90.00 |
|  | SB | Teleconference with Adam Silverman to discuss preparation of cease and desist letter to pre-petition freight vendors, suitable advice to provide to Chapco clients, and Debtor plans to deal with these claims. | 0.20 275.00/hr | 55.00 |
|  | DP | Discussion with Michael Golde regarding Chapco customer letters, statement verification and pre/post offset letter, suggested amendments to customer verification letter. | 0.40 200.00/hr | 80.00 |
|  | SUBTOTAL: |  | [   30.10 | 8,696.00] |

DIP 02

| 7/13/2004 | MJG | Review of revised draft of DIP Financing Order; prepare comments and proposed revisions thereto; | 1.10 300.00/hr | 330.00 |

Chapco Carton Corporation DIP

Page    7

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/13/2004 | DGM | Review of the latest redline version of the proposed DIP Financing Order in order to provide additional comments to Debtor's counsel on same | 0.30 305.00/hr | 91.50 |
| | DGM | Conference call with Debtor counsel re: Discussion on remaining open issues of DIP Financing Order from the Debtor's perspective | 0.30 305.00/hr | 91.50 |
| | DGM | Conference call with Debtor counsel and Bank counsel re: Continued discussions on remaining open issues of DIP Financing Order from the Debtor's perspective with focus on variances from projected results and professional fee related issues | 0.30 305.00/hr | 91.50 |
| | DGM | Phone call with J. Ross re: Discussion of IFC related issues | 0.20 305.00/hr | 61.00 |
| | JM | Review of DIP financing order. | 0.60 270.00/hr | 162.00 |
| | MJG | Conference with Dale Marcus regarding operating budget for DIP Financing Order; review budget to prepare for possible testimony regarding same; | 0.40 300.00/hr | 120.00 |
| | DGM | Phone call with F. Striplin of IFC Credit re: Discussions on the Chapco Chapter 11 filing and its implications to IFC | 0.20 305.00/hr | 61.00 |
| | DGM | Revisions/updates to currently proposed six week budget to reflect opening week balances as compared to mid prior week beginning balances | 0.90 305.00/hr | 274.50 |
| 7/14/2004 | DGM | Phone calls (2) with B. Perna re: Discussions on the format of the borrowing base and use of the pre-petition loan for post-petition advances | 0.30 305.00/hr | 91.50 |
| | DGM | Meeting with M. Golde and B. Kugman re: Discussions on the results of the same day hearing on the Debtor's proposed DIP Financing Order | 0.30 305.00/hr | 91.50 |
| | MJG | Conference with Dale Marcus regarding DIP Financing Order and proposed budget; preparation for court hearing regarding same; | 0.50 300.00/hr | 150.00 |
| | DGM | Meeting with M. Golde re: Review of the underlying assumptions of the KA prepared six-week budget for his potential upcoming testimony in Bankruptcy Court | 0.30 305.00/hr | 91.50 |
| | DGM | Review/modification of the list of KA responsibilities by consultant for potential upcoming meeting with CTB representatives on this same issue | 0.50 305.00/hr | 152.50 |
| | MJG | Additional review of DIP Financing Order provisions regarding treatment of carve-out and other budget expenses in the event of Event of Default and Termination Date of Financing Order; budget variance provisions; | 0.20 300.00/hr | 60.00 |

Chapco Carton Corporation DIP

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/14/2004 | CF | Detailed review of the latest budget as prepared by Dale Marcus. Transmitted to Debra Percy, Jim McCarthy, and Sandy Bryant for their review. | 0.30 185.00/hr | 55.50 |
| | JM | Detailed review of three CHAPCO budget scenarios with related assumptions. | 1.30 270.00/hr | 351.00 |
| | JM | Detailed review of proposed DIP budget and subsequent changes. | 1.10 270.00/hr | 297.00 |
| 7/15/2004 | SB | Teleconference with Dale Marcus to discuss engagement status and issues related to budget, overages on paperboard for first week, shortfalls in shipments and status of Chapter 11 filing status issues. | 0.30 275.00/hr | 82.50 |
| 7/16/2004 | DGM | Phone call with M. Golde re: Discussions on the remaining open issues of the Interim DIP Financing Order | 0.20 305.00/hr | 61.00 |
| | SB | Teleconference to Janice Haig at Cole Taylor Bank to reaffirm approval for daily disbursements. | 0.10 275.00/hr | 27.50 |
| | JM | Review of recommended changes to borrowing base reporting from Dale Marcus. | 0.40 270.00/hr | 108.00 |
| | MJG | Review notice of entry of interim financing order and setting final hearing regarding same; prepare e-mail to Dale Marcus regarding same; | 0.20 300.00/hr | 60.00 |
| | MJG | Review of minor modifications to DIP Financing Order; telephone conference with Debra Percy regarding entry of Interim Financing Order and reviewing Kugman duties and responsibilities thereunder; | 0.30 300.00/hr | 90.00 |
| | SB | Review of key elements of DIP financing order related to documentation requirements for Cole Taylor bank. | 0.70 275.00/hr | 192.50 |
| | MJG | Telephone conference with Debra Percy regarding DIP Financing Order; | 0.20 300.00/hr | 60.00 |
| | MJG | Telephone conference with Dale Marcus regarding Kugman duties and responsibilities under Financing Order; | 0.20 300.00/hr | 60.00 |
| | DGM | Meeting with J. Podwika re: Review of proposed revisions to the borrowing base that would address the DIP Financing Order terms | 1.00 305.00/hr | 305.00 |
| 7/19/2004 | SB | Discussion with Jerry Poch to review daily disbursements, issues related to borrowing base and availability for borrowing base certificate. | 0.50 275.00/hr | 137.50 |
| | SB | Meeting with Chad Gettlemen to discuss engagement status, issues related to IFC and equipment valuations, motions for court hearing on Thursday, employee issues, bank reporting requirements, operations update and status of creditor committee formation. Discuss landlord and Esselte status and issues. Confirm release of Esselte materials and receipt of funds. | 0.70 275.00/hr | 192.50 |

Page    9

Chapco Carton Corporation DIP

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/19/2004 | SB | Review updated borrowing base and flash report documents and compare to DIP budget. Brief review of DIP financing order for compliance. | 0.30 275.00/hr | 82.50 |
| 7/21/2004 | SB | Teleconference with Chad Gettlemen to discuss court motions for wages, status of Humana insurance payment and issues related disability insurance benefits agreement. | 0.20 275.00/hr | 55.00 |
| | DGM | Conference call with J. Podwika and J. Ross regarding discussion on the Debtor's performance as well as the potential Debtor requirement of an additional inventory purchase jumpstart | 0.30 305.00/hr | 91.50 |
| 7/22/2004 | MJG | Review of e-mail message from Dale Marcus re Financing Order issues; treatment of professional fee ""Carve-Outs""; | 0.10 300.00/hr | 30.00 |
| | DGM | Conference call with D. Percy, J. Podwika and J. Ross re: Continued discussion on the Debtor's performance and the issues related to slow raw material deliveries and its associated impact on borrowing base availability and a review of some of the accounting related issues to inventory and the associated proposed changes to procedures to improve reporting of same | 0.80 305.00/hr | 244.00 |
| | SB | Review of DIP financing order to ensure compliance with bank reporting and insurance requirements. | 0.40 275.00/hr | 110.00 |
| | MJG | Telephone conference with Dale Marcus and Howard Adelman regarding timing of filing of tax returns and retention of accountants and estimated cost thereof; financing order issues; | 0.30 300.00/hr | 90.00 |
| 7/23/2004 | MJG | Telephone conference with Bill Factor regarding Kugman retention issues; prepetition payments to Kugman; | 0.20 300.00/hr | 60.00 |
| | MJG | Review of Kugman prepetition invoices and summary of services; review same as follow-up to telephone conference with Bill Factor; | 0.30 300.00/hr | 90.00 |
| | MJG | Conference with Dale Marcus regarding telephone conference with Bill Factor regarding Kugman retention issues and prepetition payments; | 0.20 300.00/hr | 60.00 |
| | SB | Review of DIP budget, and preparation of additional estimates of expense for Dale Marcus for incorporation into budget for subsequent revisions. Review projected insurance and payroll estimates. | 0.80 275.00/hr | 220.00 |
| 7/26/2004 | JM | Discussion with Sandy Bryant regarding budget variances. | 0.60 270.00/hr | 162.00 |
| | CF | Discussion with Jerry Poch regarding the last monthly financial statements prepared by Chapco to be transmitted to both Dale Marcus and Adam Silverman and ultimately to Lynn Herro, chairperson for unsecured creditors. | 0.50 185.00/hr | 92.50 |
| | SB | Review of daily flash report, production results for weekend and receivings for past three days. Compare to cash budget model | 0.60 275.00/hr | 165.00 |

Chapco Carton Corporation DIP                                                           Page    10

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|

7/26/2004 JM   Teleconference with Dale Marcus to discuss budget variances and possible actions.   0.50 / 270.00/hr   135.00

7/27/2004 SB   Meeting with Jerry Poch and Brian Moskowich to discuss tasks to be assigned to temporary accounting staff hire. Also review procedures to reconcile loan revolver balances between bank report and Chapco book report.   0.70 / 275.00/hr   192.50

7/28/2004 CF   Preparation of the beginning balances of the Chapco budget based upon the actuals recorded for the week ending July 24, 2004.   1.20 / 185.00/hr   222.00

7/29/2004 DGM   Conference call with S. Bryant, J. McCarthy and C. Farkas re: Discussions concerning modified assumptions for the updated DIP Operating Budget and review of concerns that could impair the Debtor's ability to restructure its operations   0.80 / 305.00/hr   244.00

DGM   Continued modifications/enhancements of first DIP Operating Budget in terms of update through the first DIP budget period   3.20 / 305.00/hr   976.00

CF   Detailed review of the revised DIP Operating Budget as prepared by Dale Marcus for distribution to the committee.   0.30 / 185.00/hr   55.50

JM   Meeting with Dale Marcus, Sandy Bryant and Christine Farkas to review DIP operating budget assumptions and compare against actuals to date.   1.00 / 270.00/hr   270.00

SB   Daily review of disbursements and receivings for approval and subsequent transmittal to Cole Taylor bank.   0.50 / 275.00/hr   137.50

SB   Review of documentation requirements and UCC and attention to preparation of documents for transmission. Provide direction to Jerry Poch and Christine Farkas regarding procedures for regular submissions. Review of first set materials to be sent.   0.70 / 275.00/hr   192.50

CF   Teleconference with Dale Marcus, Jim McCarthy, and Sandy Bryant regarding the accuracy of the budget prior to its distribution to the Committee.   0.40 / 185.00/hr   74.00

SUBTOTAL:                                                           [ 28.80   8,051.50]

DIP 03

7/23/2004 SB   Discussion with Jerry Poch regarding Creditors Committee requests for financial statements, documentation and information. Continued discussion on inventory valuation, calculation of WIP percentages and adjustments to standard for costing purposes. Review files and reports from June from Bill Weirsma regarding costing model and study which updated allocations for overheads.   0.50 / 275.00/hr   137.50

SB   Teleconference with Dale Marcus regarding Kugman Associates strategy to respond to creditor committee requests for documentation, Follow-up teleconference with Howard Adelman requesting direction,   0.30 / 275.00/hr   82.50