# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04 B 26000 |
| a Delaware corporation | ) | |
| FEIN 36-2057071 | ) | |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |
| | ) | **Hearing Date and Time:** |
| | ) | **December 17, 2009 at 10:30 a.m.** |

## NOTICE OF MOTION

TO:  Attached Service List

**PLEASE TAKE  NOTICE** that on Thursday, the 17th day of December, 2009, at the hour of 10:30 a.m., we shall appear before the Honorable Bruce W. Black, United States Bankruptcy Judge for the Northern District of Illinois, or any Judge sitting in his place and stead, in courtroom 615 of the United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the **MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPCO CARTON COMPANY, DEBTOR IN POSSESSION** (the **"Motion"**), a copy of which was originally filed on August 18, 2005 **(Original Docket No. 285)** and is being re-filed concurrently herewith and hereby served upon you, along with a copy of the proposed Order in connection with the Motion.

> CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
> ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
> ADELMAN & GETTLEMAN, LTD.
> 53 West Jackson Boulevard, Suite 1050
> Chicago, Illinois 60604
> 312/435-1050

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of this Notice of Motion, the Motion, and the proposed Order in connection with the Motion has been served upon the persons listed on Service List attached hereto in the manner indicated on said service list.

Date:   November 20, 2009

> _____/s/ Adam P. Silverman_____
> Adam P. Silverman, Esq.

84892.1 11/20/09

## SERVICE LIST

**VIA ECF**

Roman L. Sukley, Esq.
Office of U.S. Trustee
U.S. Department of Justice
227 W. Monroe Street, Suite 3350
Chicago, IL   60606
Email: roman.l.sukley@usdoj.gov

William T. Neary, Esq.
Office of the United States Trustee
Dirksen Federal Court House
219 South Dearborn Street, Suite 873
Chicago, IL 60604
Fax: (312) 886-5794
Email: USTPRegion11.ES.ECF@usdoj.gov

Cole Taylor Bank
c/o Eric S. Prezant, Esq.
Bryan Cave, LLP
161 North Clark Street, Suite 4300
Chicago, IL 60601
Email: eric.prezant@bryancave.com

IFC Credit Corp.
c/o Gus A. Paloian, Esq.
Sara E. Lorber, Esq.
Seyfarth Shaw LLP
131 S. Dearborn Street, Suite 2400
Chicago, Illinois 60603-5803
Email: gpaloian@seyfarth.com

MAC Funding Corporation
MLP U.S.A., Inc.
c/o John B. Stanis, Esq.
Masuda Funai Eifert & Mitchell, Ltd.
Schaumburg Office
1475 East Woodfield Road, Suite 800
Schaumburg, Illinois 60173-5485
Email: jstanis@masudafunai.com

Faye B. Feinstein, Esq.
Quarles & Brady LLP
500 W. Madison Street, Suite 3700
Chicago, Illinois 60661
Email: faye.feinstein@quarles.com

People's Capital & Leasing Corp.
c/o Dennis A. Dressler, Esq.
Dressler & Peters, LLC
111 W. Washington Street, Suite 1900
Chicago, IL 60602
Email: ddressler@dresslerpeters.com

Deborah K. Ebner, Esq.
Law Office of Deborah Kanner Ebner
11 E Adams St Ste 904
Chicago, IL 60603
Email: dkebner@deborahebnerlaw.com

Steven B. Towbin, Esq.
Shaw Gussis Fishman Glantz
   Wolfson & Towbin LLC
321 N. Clark Street, Suite 800
Chicago, IL 60610
Email: stowbin@shawgussis.com

Janice A. Alwin, Esq.
Barack Ferrazzano Kirschbaum &
Nagelberg
200 W Madison St, Ste 3900
Chicago, IL 60606
Email: janice.alwin@bfkn.com

Christopher Combust, Esq.
Quarles & Brady LLP
Citicorp Center
500 W Madison St Ste 3700
Chicago, IL 60661
Email: ccombest@quarles.com

Mark L. Prager, Esq.
Cynthia A. Fonner, Esq.
Amie M. Goble, Esq.
Foley & Lardner LLP
321 N Clark Street, Suite 2800
Chicago, IL 60610
Email: khall@foley.com

**VIA ECF CONT'D**

Michael L. Gesas, Esq.
Arnstein & Lehr, LLP
120 South Riverside Plaza, Suite 1200
Chicago, IL 60606-3910
Email: mlgesas@arnstein.com

John J. Grieger, Jr., Esq.
Johnson & Newby, LLC
39 South LaSalle Street, Suite 820
Chicago, IL 60603
Email: ECFNIL@weltman.com

Gregory J Jordan, Esq.
Apostol, Kowal & Jordan, Ltd.
200 South Wacker Drive - 32nd Floor
Chicago, IL 60606
Email: gjordan@akjltd.com

Jeremy C Kleinman
Quarles & Brady LLP
500 W. Madison Street, Suite 3700
Chicago, IL 60661
Email: jkleinman@fgllp.com

Connie J Lambert, Esq.
Law Office of Deborah K. Ebner
11 East Adams St. - Suite 800
Chicago, IL 60603
Email: cjlambert@deborahebnerlaw.com

Lauren N. Nachinson, Esq.
Quarles & Brady
300 North LaSalle Street, Suite 4000
Chicago, IL 60654
Email: Lauren.Nachinson@quarles.com

James M Philbrick, Esq.
Law Offices of James M. Philbrick, P.C.
P. O. Box 351
Mundelein, IL 60060
Email: jmphilbrick@att.net

Mark L Radtke, Esq.
Shaw Gussis Fishman Glantz, etal
321 N Clark St Ste 800
Chicago, Il 60610
Email: mradtke@shawgussis.com

Peter J Roberts, Esq.
Shaw Gussis et al
321 North Clark St., Suite 800
Chicago, IL 60610
Email: proberts@shawgussis.com

Mark D. Roth, Esq.
Orum & Roth
53 W. Jackson Blvd., Suite 1616
Chicago, IL 60604
Email: roth.mark@sbcglobal.net

Gary D. Santella, Esq.
Masuda Funai Eifert & Mitchell Ltd
203 N LaSalle Ste 2500
Chicago, IL 60601
Email: gsantella@masudafunai.com

Benjamin L. Schneider, Esq.
Quarles & Brady
500 West Madison, Suite 3700
Chicago, IL 60661
Email: bschneid@quarles.com

Michael J. Small, Esq.
Foley & Lardner LLP
321 North Clark Street, Suite 2800
Chicago, IL 60610
Email: msmall@foley.com

John B. Stanis, Esq.
Masuda, Funai, Eifert & Mitchell
1475 E. Woodfield Road, Suite 800
Schaumburg, IL 60173
Email: jstanis@masudafunai.com

Gary Vist, Esq.
Masuda, Funai, Eifert & Mitchell Ltd.
203 N. LaSalle Street, Suite 2500
Chicago, IL 60601
Email: gvist@masudafunai.com

Mark D. Wilcox, Esq.
Walker Wilcox Matousek LLP
225 W. Washington Street
Suite 2400
Chicago, IL 60606
Email: mwilcox@wwmlawyers.com

Heather A. Wright, Esq.
Morgan Lewis & Bockius
77 West Wacker Drive, 5th Floor
Chicago, IL 60601
Email: hwright@morganlewis.com

**FIRST CLASS MAIL**

Douglas J. Like, Esq.
Vedder Price PC
222 N. LaSalle St., Suite 2600
Chicago, IL 60601
Fax: 312-609-5005

Michael J Golde, Esq.
Kugman Associates Inc
30 North LaSalle Street, Suite 1724
Chicago, IL 60602
Fax: 312-376-8788

James W Kienzle, Esq.
Walker Wilcox Matousek LLP
225 W Washington Street, Suite 2400
Chicago, IL 60606
Fax: 312-244-6800

Mark L. Prager, Esq.
Foley & Lardner
321 N Clark St # 2800
Chicago, IL 60610
Fax: 312-832-4700

Christopher A Wadley
Walker Wilcox Matousek LLP
225 W Washington Street, Suite 2400
Chicago, IL 60606
Fax: 312-244-6800

Elizabeth Graham Weber
Dressman Benzinger LaVelle psc
207 Thomas More Parkway
Crestview Hills, KY 41017
Fax: 859-341-1469

J Michael Williams, Esq.
Cohon Raizes & Regal LLP
208 S LaSalle Street, Suite 1860
Chicago, IL 60604
Fax: 312-726-0609

Canon Financial Services, Inc.
c/o Andrew Sklar, Esq.
Law Offices of Andrew Sklar PC
411 Route 70 East, Suite 200
Cherry Hill, NJ 08034
Fax: 856-616-8716

Lithographic Industries
2445 Gardner Road
Broadview, IL 60155
Fax: 708-865-0738

Charlie Kiolbasa, Jr.
9075 Turnberry Drive
Burridge, IL 60527

Chapco Carton Company
515 Crossroads Parkway
Bolingbrook, IL 60440

Miller Cooper & Co., Ltd.
1751 Lake Cook Rd., Suite 400
Deerfield, IL 60015-5286

Kenneth A. Rosen, Esq.
Paul Kizel, Esq.
S. Jason Teele, Esq.
Lowenstein Sandler, PC
65 Livingston Ave.
Roseland, NJ  07068

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04 B 26000 |
| a Delaware corporation | ) | |
| FEIN 36-2057071 | ) | |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |

## COVER SHEET FOR APPLICATION FOR PROFESSIONAL COMPENSATION

**Name of Applicant:**  Howard L. Adelman, Chad H. Gettleman and Adam P. Silverman
Adelman & Gettleman, Ltd.

**Authorized to Provide Professional Services to:**   Chapco Carton Company

**Date of Order Authorizing Employment:**  July 22, 2004

**Period for Which Final Compensation is Sought:** From July 13, 2004 through March 24, 2005.

**Amount of Fees Sought:**    $462,037.50 (additional compensation after application of payments received pursuant to that certain monthly payment order entered herein on July 29, 2004 and prepayment- $149,134.58).

**Amount of Expense Reimbursement Sought:**    $9,473.09 (additional expenses to be reimbursed after application of expenses previously reimbursed - $1,329.95).

**This is a:** Interim Application ____ Final Application   X  .

**Prior Applications:** There have been *no* prior fee applications filed herein by Applicant. During the period July 13, 2004 through December 31, 2004, Applicant received a total of $282,528.87 in fees and $8,143.14 in costs pursuant to that certain Order Establishing Procedures for the Payment of Monthly Interim Compensation And Reimbursement of Expenses of Professionals entered in this case on July 29, 2004. In addition, prior to the commencement of this case, Applicant had received a prepayment for services to be rendered herein in the amount of $40,000.00.

Date: August 18, 2005.         APPLICANT:

ADELMAN & GETTLEMAN, LTD.

By____ /s/ Chad H.Gettleman____
Chad H. Gettleman

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| CHAPCO CARTON COMPANY, | ) | Case No. 04 B 26000 |
| a Delaware corporation | ) | |
| FEIN 36-2057071 | ) | |
| | ) | Honorable Bruce W. Black |
| Debtor. | ) | |

--------------------------------------------------------------------------------

# MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO CHAPCO CARTON COMPANY AS DEBTOR IN POSSESSION

HOWARD L. ADELMAN, ESQ. (ARDC # 0015458)
CHAD H. GETTLEMAN, ESQ. (ARDC #944858)
ADAM P. SILVERMAN, ESQ. (ARDC #6256676)
ADELMAN & GETTLEMAN, LTD.
53 West Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050

Attorneys for Debtor

68383.1 8/17/05

<u>TABLE OF CONTENTS</u>

I.      Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.     History of the Company and Present Status of Case . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        A.      History of the Company and Events Leading to Chapter 11. . . . . . . . . . . . . . . . 8
        B.      Debtor in Possession . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
        C.      Administration of Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III.    Legal Services Rendered . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        A.      Administrative Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
        B.      Debtor in Possession Financing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
        C.      Secured Equipment Financing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39
        D.      Asset Sales Efforts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43
        E.      Plan of Reorganization . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63
        F.      Fee Petition Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

IV.     Standards for Review of Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 67
        A.      Form of Motion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                1.      Itemized Daily Entries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                2.      Telephone Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                3.      Meetings and Office Conferences . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                4.      Drafting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                5.      Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69
                6.      Minimum Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70
                7.      Lumping . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 70

V.      Billing Judgment and Avoidance of Duplication of Services . . . . . . . . . . . . . . . . . . . 71
        A.      Individual Responsibility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
        B.      Court Appearances and Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 72
        C.      Appropriate Level of Skill . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
        D.      Legal Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73
        E.      Document Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 73

VI.     Qualifications of Movant; Preclusion of Employment Due to
        Acceptance of this Case; and Cost of Comparable Services . . . . . . . . . . . . . . . . . . . . 74

VII.    Movant's Statement Pursuant to §§ 329 and 504 of the
        Bankruptcy Code and Bankruptcy Rule 2016 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 79

VIII.   Conclusion and Request for Allowance and Payment of Final
        Compensation and Reimbursement of Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . 80

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                    )      Chapter 7

CHAPCO CARTON COMPANY,      )      Case No. 04 B 26000
a Delaware corporation            )
FEIN 36-2057071               )
                         )      Honorable Bruce W. Black
           Debtor.        )

**MOTION OF ADELMAN & GETTLEMAN, LTD. FOR ALLOWANCE OF FINAL
COMPENSATION AND REIMBURSEMENT OF EXPENSES AS COUNSEL TO
CHAPCO CARTON COMPANY AS DEBTOR IN POSSESSION**

TO:     THE HONORABLE BRUCE W. BLACK,
        U.S. BANKRUPTCY JUDGE:

Now comes Howard L. Adelman, Chad H. Gettleman and Adam P. Silverman on behalf

of Adelman & Gettleman, Ltd., (**"Movant"**), counsel to Chapco Carton Company, an Illinois

corporation, debtor herein (**"Chapco"**, the **"Company"** or the **"Debtor"**), and requests the entry

of an order for the allowance and payment of final compensation and reimbursement of ordinary

and necessary expenses incurred in connection therewith as counsel to the Debtor during the

pendency of this case under Chapter 11 of the Bankruptcy Code, pursuant to Section 330 of the

Bankruptcy Code (the **"Code"**) and Bankruptcy Rule 2016, and in support thereof, respectfully

states as follows[1]:

---

[1]Although Movant understands that it may be some time before Deborah K. Ebner, Esq., duly appointed
Chapter 7 trustee herein, may obtain sufficient funds to satisfy any of the unpaid chapter 11 administrative expenses
in this case, including that sought by Movant herein, Movant is filing this Motion pursuant to a bar date for filing
claims in this Chapter 7 case established by this Court. As Movant continues to render such assistance to the Trustee
as is requested, this Motion does not include a request for payment of compensation for services rendered and costs
incurred by Movant during the Chapter 7 period. Movant expressly reserves the right to seek payment of a Chapter 7
administrative claim in its favor at such time hereafter as may be appropriate.

# I.
## INTRODUCTION

This motion (the **"Motion"**) encompasses the period from July 13, 2004, the date of the commencement of this case, through March 24, 2005, the date that the Court entered an order converting the Chapter 11 Case to a proceeding under Chapter 7 of the Bankruptcy Code (the **"Conversion Date"**) (the **"Chapter 11 Case"** or **"Chapter 11 Period"**).

As can be seen below, the Chapco Chapter 11 Case was a labor intensive case providing Movant with an almost daily procession of challenging issues, difficulties and competing interests which Movant worked diligently to resolve in an expeditious and professional manner. With six different secured creditors and lessors, each of whom held critical interests in various assets of the Debtor, an extremely active Creditors' Committee (**"Committee"**), constant budgeting and operational problems and a host of other issues, Movant found itself providing services to the Debtor often to the complete preclusion of many other matters throughout the Chapter 11 Period.

Movant has not filed any prior motions for the allowance of interim compensation in this case. However, pursuant to that certain Order Establishing Procedures for the Payment of Monthly Interim Compensation and Reimbursement of Expenses of Professionals entered in the Chapter 11 Case on July 29, 2004, all court appointed professionals for the Debtor and the Committee, including, Movant, were entitled to submit and receive payment on monthly invoices beginning with services rendered from and after the commencement of the Chapter 11 Case, provided that no timely objections were filed[2] (**"Monthly Payment Order"**). To that end, as more fully described below, and pursuant to the Monthly Payment Order, Movant received

---

[2]There were never any objections filed to any of Movant's monthly invoivces.

monthly payments totaling $282,528.87 of fees and $8,143.14 expenses (collectively, the

**"Monthly Payments"**). In addition, as of the filing of the Chapter 11 Case, Movant held a

prepayment in the amount of $40,000 from the Debtor for services to be rendered, and costs to be

incurred, as counsel to the debtor in possession in Chapter 11 Case[3].

Payments requested and Monthly Payments received by Movant pursuant to the Monthly

Payment Order may be summarized as follows (months in which services are rendered are

reflected):

| MONTH | FEES INCURRED | FEES RECEIVED | COSTS INCURRED | COSTS RECEIVED | TOTAL PAID | BALANCE UNPAID |
|---|---|---|---|---|---|---|
| 7/04 | $67,559.49 | $59,665.50 | $1,264.49 | $1,264.49 | $60,929.99 (8/19/04) | $ 7,893.99 |
| 8/04 | $68,281.71 | $61,453.49 | $3,109.71 | $3,109.71 | $ 64,563.20 (9/28/04) | $ 6,828.22 |
| 9/04 | $77,200.74 | $68,706.90 | $859.74 | $859.74 | $ 69,566.64 (10/15/04) | $ 8,493.84 |
| 10/04 | $57,284.33 | $51,049.35 | $562.83 | $562.83 | $ 43,599.09 (11/15/04) $ 8,013.09 (11/23/04) | $ 6,234.98 |
| 11/04 | $72,779.38 | $41,653.63 | $2,346.37 | $2,346.37 | $ 44,000.00 (12/10/04) | $ 31,125.75 |
| 12/04 | $54,086.90 | - 0 - | $741.40 | - 0 - | - 0 - | $ 54,828.30 |
| TOTAL | $397,192.55 | $282,528.87 | $8,884.54 | $8,143.14 | $290,672.01 | $ 115,405.08 |

Copies of Movant's monthly cover letters and related detailed statement of services

rendered and costs incurred for each of the above months (collectively, the **"Monthly**

**Statements"**) are attached hereto as **Exhibits 1 through 6** and made a part hereof (separate

---

[3]Movant was retained by the Debtor on June 29, 2004 and received a $50,000 prepayment by wire transfer
from the Debtor on June 30, 2004 for services to be rendered. Through and including July 12, 2004, the day before
the filing of this case, Movant incurred attorneys' fees and costs in excess of its initial $50,000 prepayment, but
agreed to waive any claims for any unpaid fees and costs in excess of its initial $50,000 prepayment. Details are
available upon request. Movant's engagement letter with the Debtor required the prepayment to be replenished prior
to the filing of any bankruptcy case. To that end, Movant requested and received a replenishment in the amount of
$40,000 as a condition of filing this case, which was received from the Debtor by wire transfer on the morning of
July 13, 2004. The Chapter 11 Case was filed shortly thereafter. As such, as of the commencement of this Chapter 11
Case, Movant held a $40,000 prepayment for services to be rendered and costs to be incurred herein.

lettered exhibit tabs corresponding to the category of services rendered during each such month are attached to each of the Monthly Statements[4].

Also attached hereto as **Exhibit 7** and made a part hereof is a detailed statement of services rendered by Movant and costs incurred for the remaining time in which the Chapter 11 Case was pending (January 1, 2005 - March 24, 2005, including time spent in the preparation of this Motion, hereinafter collectively, the **"Final Period"**) for which no monthly statements were submitted as there were no funds available to pay any such fees or costs.

As more fully described in this Motion, inclusive of all remaining unpaid compensation and costs as reflected in the Monthly Statements and during the Final Period, after application of Movant's prepayment, there remains the sum of $149,134.58 due and owing Movant for services rendered during the Chapter 11 Period, including the preparation of this Motion, and the sum of $1,329.95 for costs incurred.

The Chapco case presented Movant with a constant and intense stream of responsibilities and challenges throughout the Chapter 11 Period. From the outset of the Chapter 11 Case continuing until the Conversion Date, Movant struggled to address the competing interests of a host of different parties, each of whom held a critical, and often conflicting, position concerning the Debtor's efforts to rehabilitate its affairs. In general, among other issues, Movant was required to deal with the problems presented by: (a) six (6) different primary secured lenders and lessors, each of whom held a key to the success of the Debtor's efforts, to-wit: Cole Taylor Bank, the Debtor's secured working capital lender (**"Cole Taylor"** or **"Bank"**); IFC Credit

---

[4]Upon the issuance of each of the Monthly Statements, Movant's time and billing system treats such statement as final, and therefore does not allow each of the Monthly Statements to be re-printed in a combined manner with all of the other Monthly Statements. As such, each Monthly Statement is attached hereto separately, but are summarized below in the aggregate by category and attorney.

Corporation, the Debtor's primary secured equipment lender (**"IFC"**); Mitsubishi Acceptance

Funding Corporation, a key equipment lessor of a critical printing equipment line (**"MAC**

**Funding"**); Bobst Equipment Finance Company, Inc., another key secured equipment lender

(**"Bobst"**); People's Capital & Leasing Corporation, another crucial secured equipment lender

(**"People's Capital"**); and Duke Construction Limited Partnership, the lessor of the Debtor's

145,000 square foot facility in Bolingbrook, Illinois (**"Duke Realty"**); (b) reclamation and

consignment issues regarding critical raw material issues; (c) the refusal of key suppliers to

provide vital materials needed to operate the Debtor's business; (d) disputes with various

trucking companies who held claims against the Debtor, but also claimed collection rights

directly against Movant's customers, thus threatening the Debtor's customer relationships; (e) the

concerns of Movant's customers regarding the Debtor's ability to continue to fulfill their retail

packaging needs; (f) employee related issues; (g) disputes between the Debtor's court appointed

financial advisers and the Committee over a variety of issues; (h) the status of Movant's primary

owner, president and director, Charles G. Kiolbasa, Jr., who was also the Company's chief sales

man accounting for over 80% of its sales; (i) the inability of the Debtor to meet operating and

budgetary projections; (j) the reduction of overall borrowing capability; and (k) numerous other

matters which threatened the Debtor's ability to operate within the constraints of the Chapter 11

Case on an almost daily basis.

For much of the Chapter 11 Period, the Debtor proceeded along the lines of a "dual path"

whereby it analyzed its ability to formulate and confirm an internal plan of reorganization

designed to successfully restructure Movant's liabilities and continue in operation, while also

exploring the possibility of a going concern sale of its assets and business under Section 363 of

the Bankruptcy Code.

Despite these many challenges, throughout the Chapter 11 Period, with Movant's

significant contributions, Chapco was able to operate its business, actually increase its sales

levels from those preceding the filing of the case (approximating $28 million per annum), sustain

the going concern value of its assets and business for the benefit of its creditors and other

interested parties, continue the employment of its approximately 160 employees, collect millions

of dollars of accounts receivable, resolve adequate protection issues with its secured creditors

and lessors, improve invoicing and billing procedures, and stabilize its operations for the

purposes of this case.

At all times, Movant assisted Chapco's management in analyzing, formulating and

documenting the means to conclude this case in the best interests of all interested parties. To that

end, Movant also prepared a plan of reorganization and disclosure statement that but for other

intervening factors beyond Movant's control, Movant believes would have been finalized and

confirmed, and would have provided the unsecured creditors with a distribution over time on

their allowed claims. Unable to proceed with the plan of reorganization alternative when Movant

was suddenly informed that further secured financing would not be forthcoming in amounts

sufficient to permit continuing adequate protection and lease payments to its many critical

secured creditors and lessors, Movant was required to immediately shift gears and focus all of its

efforts and energies to analyzing the means of proceeding with an auction of the Debtor's

business. To that end, Movant had to promptly structure and establish the necessary auction and

bidding procedures; obtain court approval for same; negotiate and prepare a sample asset

purchase agreement for use by interested parties; negotiate with a variety of prospective

purchasers, including the four different bidders who ultimately attended the auction; struggle to

maintain the Debtor's minimum borrowing requirements; conduct a highly complicated 9 1/2

auction involving the four bidders, the six key secured creditors and lessors, the Debtor's

principal, and the Committee; obtain court approval of the winning bid; and assist the Debtor,

buyer, secured creditors and lessors in completing what turned out to be a highly contentious,

complex and difficult asset sale closing which provided for the assumption of some $19,000,000

of various secured and lease obligations by the successful purchaser. Thereafter, Movant

expended a significant effort in attempting to structure a settlement which could have concluded

the Chapter 11 Case by means of a liquidating plan of reorganization and saved the estate

hundreds of thousands of dollars of secured and administrative claims.

        In total, as reflected herein, Movant has expended approximately 1,292.10 hours of

professional legal services during the Chapter 11 Period (including the preparation of this

Motion) and requests allowance and payment of final compensation for services rendered during

the Chapter 11 Period, including the preparation of this Motion, in the amount of $462,037.50

(additional compensation requested after application of Monthly Payments and Movant's

$40,000 prepayment - $149,134.58) and reimbursement of ordinary and necessary expenses

incurred in connection therewith in the amount of $9,473.09 (additional expense reimbursements

requested after application of expense reimbursements received pursuant to the Monthly Payment

Order - $1,329.95).

        Movant submits that the efforts put forth and the results achieved to date amply support

the allowance of final compensation requested herein although Movant recognizes that it might

be a long time before any such additional compensation can be paid. Movant has acted as consultant, negotiator, arbitrator, analyst, draftsman and legal advisor. Movant guided the Debtor through numerous issues which arose in this case. Movant's efforts did not come easily as almost every aspect of this case during the Chapter 11 Period was contested. As more fully set forth below, Movant expended significant efforts throughout the entire Chapter 11 Period and at all times, endeavored to maximize the value of all assets in this estate for the benefit of all creditors and other interested parties herein and minimize the expenses incurred in connection therewith. The distinctly adverse interests of many of the parties during this case consistently confronted Movant with continual, formidable challenges which Movant addressed professionally, efficiently and expeditiously.

II.

## HISTORY OF THE COMPANY AND CHAPTER 11 CASE

A.    History of the Company and Events Leading to Chapter 11.

For almost 70 years, the Debtor and its predecessor was a family owned business. The Debtor's predecessor, Charles Paper Company, a wholesale paper distributor, was formed in 1936 by the father of the Debtor's current president, Charles G. Kiolbasa, Jr. As the business grew through the years, it became involved in retail packaging. In 1977, the Debtor was incorporated under the laws of the state of Delaware, and took over the business of its predecessor. At that time, the Debtor's president and majority stockholder was Ronald Kiolbasa, half brother of its current president. Since 1977, and continuing to the Conversion Date, the Debtor was engaged in the business of manufacturing, selling and distributing folding cartons

8

used for retail packaging in food, candy, office supplies and the automotive parts industries. The

Debtor purchased paperboard product in large rolls and converted such raw material into finished

goods through the processes of printing, cutting, folding and glueing. Its sales were conducted on

a nationwide basis, with additional sales in Mexico. Substantially all of the Debtor's products

were custom made bearing certain artwork specific to the particular customer.

At the outset of the Chapter 11 Case, and continuing throughout the operational portion

of Chapter 11 Case, the Debtor employed approximately 160 employees - 12 executive and

administrative personnel; approximately 140 plant workers; 4 supervisors and 4 sales persons.

The Debtor had approximately $28,000,000 in sales for its fiscal year ending June 30, 2004.

Sales for the previous year were in a similar range. The Debtor's operations were conducted on a

24 hour per day basis utilizing three separate shifts, with certain departments operating on a 24/7

basis. The Debtor's business, as with many others in the packaging business, was characterized

as high volume, low margin.

The Debtor had a change of control during 1990 when its current president, Charles

Kiolbasa, acquired the stock holdings of Ron Kiolbasa. At that time, the Debtor's annual sales

were approximately $9 million. During the next 10 years, under the direction of Charles

Kiolbasa, the Debtor embarked on an expansion program whereby it sought new sales

opportunities, and obtained additional operating machinery and equipment needed to support its

ever growing sales volume and customer base. By 2000, the Debtor enjoyed annual sales of over

$25 million.

However, despite this significant growth, the Debtor continued to struggle with costing

and accounting practices which predated the 1990 change of control and given the Debtor's rapid

9

expansion were not immediately thought by its new management to pose a significant problem.

Ultimately, new costing, purchasing and accounting procedures and controls were implemented,

but not before various operating problems consumed time and money to correct.

Some of the problems which ultimately led to the cash flow difficulties preceding the

filing of this case actually began in or around 1994 when the Debtor was negotiating an extension

of its lease for its then River Grove facility. In connection with those negotiations, it was

discovered that during the 1980s and prior to the 1990 change of control, printing waste had

spilled out of that facility creating an unsatisfactory environmental condition. In 1994, when the

Debtor attempted to extend its lease, the River Grove landlord required the Debtor to clean up

the property. The Debtor undertook several clean up efforts, but was unable to resolve the

situation with its landlord who continually had further demands.  Ultimately, the Debtor's

environmental counsel recommended that the Debtor obtain a "no further action" letter from the

Illinois Environmental Protection Agency in order to conclude all further negotiations with the

landlord. Over a 6 year period, the clean up costs and legal fees incurred by the Debtor in

obtaining the no further action letter totaled approximately $600,000 and consumed critical

working capital.

Between 1994 and 2000, the Debtor continued to grow its sales, expand its customer base

to include additional, well known entities in the food industry among others, improve its

efficiencies, modernize its operating and accounting practices and take such other steps as were

designed to improve profitability.

As a result of the Debtor's continuing expansion between 1994 and 2000, the Debtor

needed larger facilities than its 85,000 square foot River Grove facility. To that end, in

10

September 2000, the Debtor moved its business operations from River Grove to those certain leased premises commonly known as 515 Crossroads Parkway, Bolingbrook, Illinois (**"Bolingbrook Facility"** or **"Bolingbrook Lease"**), which it occupied throughout the Chapter 11 Period. At the time of the Debtor's relocation to the Bolingbrook Facility, it was new construction and had been built primarily according to the Debtor's needs and specifications. As the first tenant of the Bolingbrook Facility, the Debtor had significant input in the building's construction. With approximately 145,000 square feet, the Bolingbrook Facility was designed to allow the Debtor to enjoy increased capacity and productivity.

Unexpectedly, the Debtor incurred almost $1 million of extraordinary costs in connection with its relocation to Bolingbrook when it suffered a major equipment failure. One of the Debtor's three multi-color printing presses, a complicated piece of machinery essential to the Debtor's business, failed to work following its dismantling and relocation to the Bolingbrook Facility. At that time, the Debtor did not have any backup machinery for that unit. To continue to timely meet all of its customers' orders, the Debtor was forced to subcontract out its customers' color printing needs and incurred approximately $900,000 of these unexpected costs. The Debtor subsequently filed a business interruption insurance claim for this equipment failure, but after months of discussion, the Debtor's insurance carrier denied the claim asserting there was no applicable coverage. Faced with the cash flow drain caused by the problem itself, and potential very significant litigation costs to contest the insurance carrier's position, the Debtor reluctantly dropped further pursuit of the insurance claim.

The combination of the ongoing financial drain caused by the River Grove environmental costs and the failure of its color printing press caused the Debtor to become out of formula under

11

its borrowing arrangements with its then secured lender, American National Bank and Trust

Company of Chicago, now part of JPMorgan Chase Bank, N. A. ("ANB"). Unable to meet

ongoing cash needs, the Debtor found itself having a substantial overdraft in its operating

account at ANB. In July 2001, the Debtor commenced workout negotiations with ANB in order

to address its overdraft and cash flow problems. Following several months of negotiations, the

Debtor was able to successfully enter into a forbearance agreement with ANB that treated the

overdraft and resulting cash needs by means of a secured overadvance being extended by ANB

under the terms of such forbearance agreement and applicable loan documents.

Over the succeeding months, the ANB forbearance agreement was extended, the Debtor

continued to operate and began to enjoy a general growth trend in sales throughout most of its

fiscal year ending June 30, 2002. However, beginning in Spring 2002, more unforseen problems

occurred when several of the Debtor's more significant customers filed bankruptcy cases, leaving

the Debtor with substantial uncollectible accounts receivable. In light of these problems, ANB

advised the Debtor that it had little interest in indefinitely continuing the forbearance

arrangement. The Debtor needed to replace its working capital and term loans at ANB with new

lenders if it was to remain in business.

To address the ANB concerns, during 2003, the Debtor began looking for replacement

lenders and began to negotiate an informal restructuring with its major suppliers of their

outstanding claims against the Debtor. These efforts culminated on or about October 10, 2003.

The Debtor was successful in refinancing its working capital loans at ANB and replacing them

with new working capital loans with Cole Taylor (ANB agreed to discount its outstanding

principal claims by $700,000). The Debtor was also successful in refinancing various equipment

12

loans with ANB and replacing these with a new term loan package with IFC of $5.1 million. In addition, the Debtor successfully negotiated and entered into repayment programs with several of its larger unsecured creditors.

Despite this progress, the Debtor continued to incur increasing costs of overhead, labor, raw materials, freight and insurance which were not offset by increased sales. Unfortunately, competitive pressures did not allow the Debtor to match price increases on its products at the same rate as it was absorbing operating cost increases. Profit margins deteriorated and created working capital problems which led to the Debtor defaulting under its loan agreement with Cole Taylor by June 2004.

As a result, Cole Taylor recommended that the Debtor retain outside financial advisers to review and analyze its business operations for the purpose of determining whether the Debtor's business was viable. The Debtor agreed with Cole Taylor's recommendation and subsequently retained Kugman and Associates, a well respected Chicago financial consulting firm ("**Kugman**"). Kugman consultants immediately began their review and concluded that the Debtor's business was viable and the Debtor had the ability to operate on a profitable basis, but needed a more formal restructuring of its secured and unsecured debt. Movant initially met with the Debtor and Kugman's representatives on June 28, 2004 and was retained the next day.

Following the conclusion of its financial adviser's review and discussions with Movant to fully understand the rights, duties, and obligations of, and opportunities available to, a debtor in possession under Chapter 11 of the Bankruptcy Code, and combined with an exhaustion of its working capital outside of a debtor in possession financing arrangement, the Debtor voluntarily commenced the Chapter 11 Case.

13

B.      Debtor in Possession

From the outset of this case, the Debtor's primary concern was obtaining the necessary

raw materials (mostly, rolls of paper) needed to fulfill its customer orders. Obtaining sales had

not been Chapco's problem as it produced a superior product and Mr. Kiolbasa was a skilled

salesman with many contacts in the industry. However, cash flow problems which preceded the

filing of the Chapter 11 Case led to certain pre-petition payments to key paper suppliers being

returned for insufficient funds, and in turn, an extremely unhappy group of critical vendors. As a

result, the Committee, made up primarily of major paper mills, was extremely active from the

outset of its appointment. Weekly conference calls between Movant, the members and counsel

for the Committee, and various consultants from Kugman led to heated exchanges as to how the

Debtor intended to operate under the constraints of a reorganization proceeding, purchase

materials on a COD or cash in advance basis, and further as to the role being played by the

different Kugman consultants.

In addition, from the beginning of the case, Movant was faced with the many tasks

associated with the filing of a Chapter 11 case and this case in particular. With Movant's

assistance, the Debtor's representatives had to embark on a program to maintain and improve the

viability of the Debtor as an operating concern.  Movant expended significant efforts with the

Debtor's and Kugman's representatives analyzing such operational issues and focusing on how

best to improve the Debtor's operations and maintain existing business opportunities. Movant

also was required to address many difficult and sensitive issues concerning its financing

arrangements with Cole Taylor, the maintenance of employee benefits and morale, the

organization of the Debtor's banking and financial record keeping, and operational issues

14

necessary to maintain the Debtor as a viable operating entity given the status of orders which were being completed and efforts to obtain new orders. As mentioned, Movant was able to formulate and prepare an initial detailed plan of reorganization and disclosure statement. Movant felt confident a plan could be approved and would be filed within the initial exclusivity period in the Chapter 11 Case which was to expire on November 10, 2004. Had this plan been permitted to proceed, Movant believes that the unsecured creditors in this case would have recovered a portion of their claims in an expeditious manner and in an amount greater than they could ever hope to recover in a Chapter 7 liquidation. Movant's immediate attention and response to the Debtor's representatives was required on an almost daily basis throughout the Chapter 11 Period in order to deal with the many issues arising during the case.

C.      <u>Administration of Case</u>

Between July 13, 2004 and March 24, 2005, Movant took steps to: (i) investigate the acts, conduct, assets, liabilities and financial condition of Chapco; (ii) advise the Debtor of its rights, duties and obligations as a debtor in possession under the Code; (iii) perform such duties as were necessary to maintain the viability of Chapco within the confines of Chapter 11; (iv) assist in the Debtor's dealings with its employees, suppliers and customers; (v) assist in the Debtor's dealings and negotiations with its six (6) primary secured creditors and lessors; (vi) assist in the Debtor's dealings and negotiations with the Committee and other interested parties; (vii) market and solicit offers to purchase the Debtor's assets and business; (viii) establish and conduct a competitive bidding procedure and public auction for the sale of the Debtor's business as a going concern; (ix) obtain court approval for such sale and consummate same; (x) analyze, formulate

15

and prepare the necessary means of concluding this case; and (xi) perform such other duties as were in the best interests of this estate.

As can be seen, the majority of the time expended in this case was rendered by Chad H. Gettleman and Adam P. Silverman. However, scheduling conflicts and the constant need for an almost daily participation in numerous issues required the services of additional members of Movant, most notably Howard L. Adelman. The complexities of the Chapter 11 Case required the time and attention of Messrs. Adelman, Gettleman and Silverman, among other members of Movant, to, at often times, the almost total preclusion of other matters. The efforts required and expended by members of Movant during the Chapter 11 Period amply supports the allowance of final compensation requested herein.

III.

**LEGAL SERVICES RENDERED**

For ease of reference, Movant has identified and set forth six categories of legal services. Each category contains a narrative of the matters involved; a general description of the tasks performed; detailed time records in chronological order, with each attorney's time described therein, and the nature and purpose of such entries; and the result achieved or benefit to the estate, as required by In re Wildman, 72 B.R. 700 (Bankr. N.D. Ill. 1987); In re Pettibone Corporation, 74 B.R. 293 (Bankr. N.D. Ill. 1987); and Matter of Continental Illinois Securities Litigation, 962 F.2d 566 (7th Cir. 1992).

For ease of review, all legal services described in this Motion will be summarized as follows: (1) the first chart which is set forth below, reflects, on a monthly basis, the services rendered by category as evidenced by the Monthly Statements attached as **Exhibits 1 - 6** hereto,

16